Hugo CASTILLO–PEREZ, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

Hugo Castillo–Perez, Petitioner,

v.

**Immigration and Naturalization Service, Respondent.**

Nos. 97–70548, 99–71069.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 16, 2000

Filed May 11, 2000

Helen A. Sklar, Los Angeles, California, and Robert Jobe (argued), San Francisco, California, for the petitioner in both No. 97–70548 and No. 99–71069.

Ann Varnon Crowley, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent in No. 97–70548.

Gretchen M. Wolfinger, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent in No. 99–71069.

Before: POLITZ,[1] REINHARDT, and HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

We heard these closely related petitions for review together and now formally con-

---

1. Honorable Henry A. Politz, Senior Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

solidate them for disposition. Hugo Castillo–Perez ("Castillo"), a native and citizen of Mexico, faces deportation under section 241(a)(1)(B) of the Immigration and Nationality Act ("INA" or the "Act"), 8 U.S.C. § 1251(a)(1)(B) (1994), for entering the United States without inspection. Castillo appeals both the Board of Immigration Appeal's ("BIA's") denial of his request to remand his petition for suspension of deportation under section 244(a)(1) of the INA, 8 U.S.C. § 1254(a)(1) (1994), to an Immigration Judge ("IJ") (No. 97–70548), as well as the BIA's denial of his motion to reopen deportation proceedings, pursuant to 8 C.F.R. § 3.2 (No. 99–71069). In both petitions, Castillo seeks the opportunity to apply for suspension of deportation in light of his contention that he was subject to ineffective assistance of counsel at the underlying deportation proceeding.

Because Castillo has presented a valid, even compelling, claim of ineffective assistance of counsel, we grant the first petition for review (No. 97–70548) and remand the case to the BIA with instructions to order a new hearing before an IJ so that Castillo may apply for suspension of deportation under the law as it existed at the time of his initial hearing.

## BACKGROUND

Castillo illegally entered the United States from Mexico in March of 1987. Since that time he has maintained a continuous and otherwise lawful presence here. He lives with his family, which consists of his wife and three sons, two of whom are U.S. citizens. Castillo is also the owner of a furniture finishing business. He claims that he left Mexico after he and his wife received threats on their lives for his activity as a member of the opposition party, Partido Accion Nacional ("PAN").

In 1992, Castillo applied for, and was denied, asylum and withholding of deportation. On February 25, 1994, the Immigration and Naturalization Service ("INS" or the "Service") placed Castillo in deportation proceedings under an Order to Show Cause pursuant to section 241(a)(1)(B) of the Act. Prior to his hearing date, Castillo obtained the services of Mejia Immigration ("Mejia"), a business that held itself out as a provider of immigration legal services. Mejia instructed Castillo to go to his first hearing, scheduled for April 26, 1994, where he would meet his attorney, Jeffrey Portnoy ("Portnoy").

At the April 26 hearing, Castillo, represented by Portnoy, admitted the charges in the Order to Show Cause and conceded that he was deportable. Castillo requested, and was granted, an opportunity to submit an application for asylum and withholding of deportation, and, alternatively, an application for suspension of deportation and for voluntary departure under section 244(a)(1) of the INA, 8 U.S.C. § 1254(a)(1) (1994).[2] The IJ set a date for a hearing on the applications for July 28, 1994.

Additionally, the IJ explicitly advised Castillo and Portnoy that the applications were to be submitted before the close of business on May 26, 1994. The IJ admonished Castillo and his attorney that "[i]f no application is submitted by that date, the Court will deem ... [the] applications to be abandoned and we'll proceed without further notice to the parties and simply enter ... [a deportation] order in this case." The IJ instructed Portnoy to advise Castillo of these instructions and asked Castillo if he understood what had

---

**2.** Under INA § 244(a)(1) an alien's application may be granted if the alien:

(1) "has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application," and (2) "proves that during all of such period he was and is a person of good moral charac-

ter;" and (3) "is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."

INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (1994).

transpired, to which Castillo answered, "Yes."

According to Castillo, he called Mejia at least four times between the hearing date and May 26, 1994. Each time he spoke with a woman named Nora. During the last of these phone conversations, Nora told Castillo that his applications had in fact been filed.

On July 28, 1994, Castillo went to his hearing where he found out that Portnoy had still not filed the application for suspension of deportation, much less submitted it before the May 26 deadline. Accordingly, the IJ deemed the application abandoned pursuant to the court's previous order as well as 8 C.F.R. § 3.31(c).[3] Portnoy made several entreaties to the IJ to reconsider his ruling and allow him to file the application. All his requests were rejected.

Castillo thereafter obtained new counsel and filed a "Combined Motion to Reopen (Remand) and Brief on Appeal" with the BIA on August 24, 1995. Castillo argued that, in light of his counsel's ineffective assistance (failure to timely file the application) and the IJ's refusal to allow Castillo to file an application at the hearing and to reconsider his decision denying Castillo an opportunity to submit a late application, the case should be remanded to the IJ to permit Castillo to apply for suspension of deportation. On April 15, 1997, the BIA rejected Castillo's combined motion and appeal. Castillo then filed a petition for review of the BIA's decision with this court.

On July 14, 1997, Castillo also filed a motion to reopen deportation proceedings with the BIA, alleging that his due process rights were violated through Portnoy's failure to provide effective assistance. Castillo then filed a motion with this court to stay the instant proceedings pending a ruling on his July 14, 1997 motion to the

BIA. On October 16, 1997, this court denied the motion to stay this appeal.

On July 27, 1999, the BIA denied Castillo's motion to reopen. The BIA held that Castillo had established a prima facie claim of ineffective assistance of counsel. However, the BIA noted that Castillo was required to establish that he was prima facie eligible for relief in order to reopen his deportation proceedings and concluded that he could not do so because the law had changed in the intervening period and, as a result, he no longer met the seven year continuous physical presence requirement for suspension of deportation. Under the old rule, which was in effect at the time of his hearing, the seven years were counted from the date of entry up to the date on which an application for suspension of deportation was filed. The BIA held that under the new statutory scheme established by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), and the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub.L. 105–100, Title II, 111 Stat. 2193 (1997), the seven years are counted from the date of entry up to the date on which an order to show cause issues. *See* § 303(a)(3), *codified at* 8 U.S.C. § 1229b(d)(1) (1999), and § 309(c)(5)(A) of IIRIRA, *as amended* by NACARA § 203(a)(1). It is undisputed that Castillo met the residency requirement under the old law. The BIA found, however, that he failed to satisfy the new statutory requirement and was therefore unable to establish a prima facie case for the relief that he sought.

The BIA concluded that NACARA's new timing rule applied retroactively and was triggered by a general order to show cause. Because Castillo had been served with an order to show cause approximately three weeks before he would have fulfilled

---

**3.** 8 C.F.R. § 3.31(c) states: "The Immigration Judge may set and extend time limits for the filing of applications and related documents and responses thereto, if any. If an applica-

tion or document is not filed within the time set by the Immigration Judge, the opportunity to file that application or document shall be deemed waived."

the seven year requirement under the new law, the BIA held that, under its interpretation of IIRIRA and NACARA, he was now ineligible for suspension of deportation and therefore not entitled to have his deportation proceedings reopened. Castillo's petition for review of this decision constitutes the second part of this combined appeal. Because our decision to grant Castillo's petition for review is based on the BIA's dismissal of his motion to remand (not the motion to reopen), and because we conclude that, in light of the violation of Castillo's constitutional rights that occurred at his hearing, due process requires that he be afforded the benefit of the law that was applicable at the time of that hearing, we decline to exercise our discretion to consider the BIA's holding that NACARA's timing rule is triggered by an order to show cause and should generally apply retroactively.

### STANDARD OF REVIEW

■ The BIA's denial of a motion to remand is reviewed for abuse of discretion. *See Konstantinova v. INS*, 195 F.3d 528, 529 (9th Cir.1999). Claims of due process violations in deportation proceedings are reviewed de novo, *see Sharma v. INS*, 89 F.3d 545, 547 (9th Cir.1996), as are the BIA's determination of purely legal questions. *See, e.g., Ratnam v. INS*, 154 F.3d 990, 994 (9th Cir.1998).

### ANALYSIS

I. Jurisdiction

Prior to the passage of IIRIRA, most orders of deportation were subject to direct judicial review. *See* INA § 106(a), 8 U.S.C. § 1105(a) (repealed 1996). In 1996, Congress passed IIRIRA, which substantially restricted the scope of judicial review. Of importance to this case, section 309(c)(4)(E) of IIRIRA, which governs requests for suspension of deportation made pursuant to section 244 of the INA, provides that "there shall be no appeal of any discretionary decision under ... section 244 of the Immigration and Nationality Act."

Section 309(c)(4)(E) is part of the transitional rules of IIRIRA that apply to cases commenced before April 1, 1997, in which a final order of deportation was filed after October 30, 1996. *See* IIRIRA § 309(c)(1); *see also Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997) ("As to cases in which a final deportation or exclusion order was filed after October 30, 1996, and which were pending before April 1, 1997, IIRIRA's transitional rules apply."). The INS commenced deportation proceedings against Castillo in 1994. The BIA entered a final order of deportation in 1997. The case is, therefore, governed by the transitional rules of IIRIRA.

■ We hold, however, that section 309(c)(4)(E) of IIRIRA does not bar this court from exercising jurisdiction over Castillo's claim, as neither the BIA nor the IJ made a discretionary decision "under ... section 244 of the Immigration and Nationality Act." IIRIRA § 309(c)(4)(E).

It is uncontroverted that the Attorney General's decisions on section 244 motions to suspend deportation are wholly discretionary and not appealable. In *Kalaw*, we held that because the ultimate grant of suspension of deportation by the Attorney General is wholly discretionary, "under IIRIRA's transitional rules, there is no direct judicial review of the Attorney General's ultimate decision not to suspend deportation proceedings." *Kalaw*, 133 F.3d at 1152.

■ A BIA decision to deny suspension of deportation, however, is still subject to review under some circumstances. In *Kalaw*, we held that as to "those elements of statutory eligibility [for section 244 suspension of deportation] which do not involve the exercise of discretion, direct judicial review remains." *Id.* at 1150. *Kalaw* then analyzed the three statutory requirements found in INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (1994)—(1) seven years continuous physical presence, (2) good moral

character, and (3) extreme hardship resulting from alien's deportation to the alien's spouse, parent, or child, who is either a citizen or permanent resident alien—and held that IIRIRA's transitional rules preclude judicial review of BIA determinations of "extreme hardship" and "good moral character." Judicial review remains, we held, as to the "continuous physical presence" requirement and the per se categories for excluding eligibility for failure to possess "good moral character." *Id.* at 1152.

Undoubtedly, both the IJ's and the BIA's decisions were "discretionary." The IJ did not have to deem Castillo's application abandoned, and the BIA surely exercised discretion in upholding the ruling and dismissing Castillo's ineffective assistance of counsel claims. These decisions, however, cannot be said to be "discretionary decision[s] *under*" section 244 of the INA, as neither the IJ nor the BIA reached the merits of Castillo's application for suspension of deportation. As the above discussion indicates, we have interpreted section 309(c)(4)(E) to pertain to the statutory eligibility requirements found in INA § 244(a)(1) and to the ultimate discretionary decision whether to grant the suspension based on the merits of the case.

Here, however, neither the IJ nor the BIA exercised any discretionary authority concerning the merits of Castillo's application. Rather, the IJ made his decision "under" his previous order setting a filing date for the suspension of deportation application, and the authority conferred by federal regulations. Likewise, the BIA's decision to reject Castillo's ineffective assistance of counsel claim in no way related to the substantive criteria governing section 244 applications. Section 309(c)(4)(E), therefore, does not prohibit this court from exercising jurisdiction over this portion of Castillo's petition; we do so pursuant to 8 U.S.C. § 1105(a)(1) (1994).[4]

## II. Ineffective Assistance of Counsel

At oral argument, the government conceded that had Castillo submitted a timely application for suspension of deportation at the time of the hearing before the IJ, he would have been eligible for such relief.[5] Moreover, in its opinion denying Castillo's motion to reopen deportation proceedings, the BIA acknowledged that Castillo had a valid claim of ineffective assistance of counsel for his attorney's failure to timely file the section 244 application.[6] Nonetheless, the BIA denied the motion based on its construction of IIRIRA. Specifically, the BIA determined that the new statutory provisions for calculating the length of continuous residence for suspension of deportation were triggered by the issuance of an order to show cause and applied retroactively to Castillo. Because Castillo had not lived in the United States for seven years before he was issued an order to show cause, the BIA held that he could not establish eligibility for suspension of deportation.

---

**4.** As noted, IIRIRA repealed section 106 of the INA, 8 U.S.C. § 1105(a)(1), which provided for judicial review of BIA decisions, and replaced it with different provisions, now codified at 8 U.S.C. § 1252 *et seq.* These new provisions generally do not apply, however, as Castillo's final order of deportation was entered after October 30, 1996, and this case was pending as of April 1, 1997. *See* sections 309(c)(1) and (4) and 306(c)(1) of IIRIRA. *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 477, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999).

**5.** Prior to the passage of IIRIRA, aliens seeking suspension of deportation could accrue

time toward the seven-year residency requirement while in deportation proceedings. By the time Castillo appeared before the IJ, he had met the residency requirement. We express no opinion on the effect, if any, of IIRIRA on the residency requirement for aliens in situations similar to that of Castillo.

**6.** We take judicial notice that Portnoy resigned from the California State Bar on November 1, 1997 with charges pending resulting from multiple complaints by former clients, many of them individuals seeking immigration assistance. *See infra* n. 11.

■ In ruling on Castillo's first motion—the motion to remand—the BIA held that Castillo had not presented a valid ineffective assistance of counsel claim because he failed to meet the procedural requirements established by the BIA in *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988). In *Lozada*, the BIA held that before it will grant a motion to reopen[7] based on ineffective assistance of counsel, the petitioner must: (1) provide an affidavit describing in detail the agreement with counsel; (2) inform counsel of the allegations and afford counsel an opportunity to respond; and (3) report whether a complaint of ethical or legal violations has been filed with the proper authorities, and if not, why. *See id.* at 639. At the time of his first hearing before the BIA, Castillo had failed to satisfy any of these formal requirements.[8]

■ We have addressed the *Lozada* requirements in only a few opinions.[9] Though our jurisprudence on the matter is limited, we discern two basic principles: first, the *Lozada* requirements are generally reasonable, and under ordinary circumstances the BIA does not abuse its discretion when it denies a motion to remand or reopen based on alleged ineffective assistance of counsel where the petitioner fails to meet the requirements of *Lozada*. *See Lopez v. INS*, 184 F.3d 1097, 1100 (9th Cir.1999) ("[t]o establish ineffective assistance of counsel in a motion to reopen, an alien must" meet *Lozada*'s requirements); *Lata v. INS*, 204 F.3d 1241, 1245 (9th Cir.2000) (citing *Lozada* requirements with approval and noting petition-

er's failure to comply, but denying petition for review on other grounds).

■ Second, our case law indicates that the *Lozada* requirements are not sacrosanct. In *Varela v. INS*, 204 F.3d 1237 (9th Cir.2000), we noted that a failure to comply with *Lozada* requirements is not necessarily fatal to a motion to reopen. *See id.* at 1240 n. 6. Though we provided little explanation for this statement, its underlying rationale was more fully developed in *Escobar–Grijalva v. INS*, 206 F.3d 1331 (9th Cir.2000), where we held that when "[t]he facts are plain on the face of the administrative record," the requirements of *Lozada* "are not dispositive...." *Id.* at 1335.

*Escobar–Grijalva* involved a particularly egregious set of facts. There was a great deal of confusion as to who was representing the petitioner at the hearing before the IJ. In an apparent fit of confusion, the petitioner eventually consented to be represented by a lawyer whom she had seen for the first time at the hearing and who was, by his own admission, completely unfamiliar with the case and unsure of whether he had even been retained by the petitioner. The hearing record, which is quoted extensively in the opinion, indicated that the IJ rejected requests from both the government's and petitioner's counsel to postpone the hearing so that the petitioner and her "lawyer" could confer. We held that under these circumstances there was no need to satisfy the formal requirements of *Lozada*. *See id.* at 1335.

---

7. In *Rodriguez v. INS*, 841 F.2d 865, 867 (9th Cir.1987), we held that "[t]he formal requirements of the motion to reopen and those of the motion to remand are for all practical purposes the same."

8. At the time of Castillo's second hearing before the BIA on his motion to reopen, Castillo had met the requirements of *Lozada*. By this time, however, IIRIRA had been passed and the BIA interpreted it to preclude Castillo from eligibility for suspension of deportation.

9. In *Lozada v. INS*, 857 F.2d 10 (1st Cir. 1988), the First Circuit affirmed the BIA's decision in *Matter of Lozada*. This affirmance, however, "did not touch on any general procedural requirement to bring an ineffective assistance of counsel claim," *Escobar–Grijalva v. INS*, 206 F.3d 1331, 1334–35 (9th Cir.2000), and therefore is not even persuasive authority with respect to the requirements established by the BIA.

The rationale of *Escobar–Grijalva* applies with equal force here.[10] The hearing record and briefing that was before the BIA on Castillo's motion to remand makes it perfectly clear that Portnoy, Castillo's first lawyer, not only completely failed in his duties to his client, but his office either misinformed or misled Castillo by representing that the petition had been filed (when, of course, it had not). And, while Portnoy acknowledged that the IJ had explicitly and repeatedly advised him of the consequences of failing to submit a timely application, Portnoy sought to excuse his failure by claiming that he "thought that it was not of a great necessity" to either timely file the application or seek an extension. Apparently, Portnoy thought that the deadline was unnecessary given the "fairly straightforward" nature of the application, and that, in his opinion, it was "highly unlikely in this particular case these documents would have been any apparent help" to the IJ, thereby obviating the need for the deadline the IJ had imposed.

■ The face of the record shows a clear and obvious case of ineffective assistance of counsel. Indeed, when Castillo formally complied with the requirements of *Lozada* in his subsequent motion to reopen, the BIA found that he had presented a valid claim of ineffective assistance of counsel. While the requirements

of *Lozada* are generally reasonable, they need not be rigidly enforced where their purpose is fully served by other means. *See Escobar–Grijalva*, 206 F.3d at 1335. *Lozada* is intended to ensure both that an adequate factual basis exists in the record for an ineffectiveness complaint and that the complaint is a legitimate and substantial one. Here, the record of the proceedings themselves is more than adequate to serve those functions. Thus, there has been substantial compliance with the rule.

■ The record is undisputed that Castillo's lawyer failed, without any reason, to timely file the application in spite of having told Castillo that he did file it, and that Castillo would have been prima facie eligible had the application been filed. The lawyer's explanation, or, more accurately, his non-explanation, is already in the record.[11] Despite Castillo's failure to meet the formal requirements of *Matter of Lozada*, we hold that he presented a valid claim of ineffective assistance of counsel to the BIA when it considered his motion to remand and thereby established that his due process rights were violated. *See Lopez v. INS*, 775 F.2d 1015, 1017 (9th Cir. 1985) (holding that "Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was pre-

10. *Escobar–Grijalva* ultimately held that the petitioner was denied the right to choose her own counsel. *See Escobar–Grijalva*, 206 F.3d at 1334–35. We do not read this holding to render the opinion's language on the *Lozada* requirements as dicta. Even if we were not bound by *Escobar–Grijalva*, however, we would still follow its reasoning and establish what we believe the opinion to have already held.

11. The record itself clearly demonstrates that Castillo received ineffective assistance of counsel. We note that even if the record were not so abundantly clear on this matter, Castillo need not have formally complied with *Lozada*'s reporting requirement. We take judicial notice that as of the 1994 hearing, at least 13 counts of violations of various state codes of professional conduct had been

charged against Portnoy relating to his work on immigration cases. *See In re Portnoy*, St. Bar Ct. Case No. 92–O–17401 (Jul. 1, 1997) (presenting findings of fact and legal conclusions on 71 counts against Portnoy and recommending disbarment). Moreover, in 1994, the Supreme Court of California ordered Portnoy disbarred for 90 days, but stayed the suspension and placed Portnoy on probation for two years. The punishment was based, in part, on Portnoy's willful failure to complete performance of the services for which he was hired in an immigration case. *See In re Portnoy, # 96869, On Discipline*, St. Bar Ct. Case Nos. 91–O–05066; 91–O–08755; 92–O–10329 (consolidated) (Apr. 7, 1994). These proceedings, at the least, obviated the need for Castillo to inform the Bar of Portnoy's failings.

vented from reasonably presenting his case.").[12]

### III. *Matter of Jean* and Excusable Neglect

■ In denying Castillo's motion to remand, the BIA held that Castillo's claim of "excusable neglect" based on ineffective assistance of counsel was "unpersuasive." In rejecting Castillo's argument, the BIA cited to *Matter of Jean,* 17 I & N Dec. 100 (BIA 1979), and also stated that Castillo "was made personally aware of the application deadline by the Immigration Judge, and is bound by the actions of his attorney."

In *Matter of Jean,* the BIA interpreted then-existing 8 C.F.R. § 108.3(b) (1980), *revoked and removed,* 46 Fed.Reg. 45116,-45118 (1981), which provided that a request for asylum after completion of a deportation hearing was to be treated as a motion to reopen and accepted for filing provided that the request "reasonably explain[s]" the petitioner's failure to assert the asylum claim prior to the completion of the deportation hearing. The BIA held that the phrase "reasonably explain" means "more than an honest explanation why the application for asylum is tardy; rather, the test is whether the neglect to previously file is excusable." *Matter of Jean,* 17 I & N Dec. at 103. The BIA then found that the petitioner's excuse that his attorney caused the delay did not constitute "excusable neglect *under the circumstances of this case." Id.* (emphasis added). The BIA noted that the lawyer's assertion that the delay was caused by confusion resulting from clerical errors on the part of the INS was insufficient justification given that the delay was seven months long.

*Matter of Jean* is not applicable here. That decision interpreted a federal regulation that no longer exists and that applied to *asylum* requests following deportation proceedings, not to requests for suspension of deportation. Furthermore, in *Matter of Jean,* the petitioner never asserted an ineffective assistance of counsel claim, and there was no evidence that the petitioner repeatedly sought to ensure, as did Castillo, that his application had been filed. Finally, in the instant case, unlike in *Matter of Jean,* Castillo was told that the application had been filed.

Additionally, *Matter of Jean* makes clear that the analysis is to be done on an individualized basis. The case states, "[w]hat excuses that are acceptable under the new regulatory standard must be judged by the circumstances in each case." *Id.* There is nothing in the BIA's decision to indicate that it undertook an individualized analysis of Castillo's claims, other than the statement that Castillo "was made personally aware of the application deadline by the Immigration Judge, and is bound by the actions of his attorney."

Moreover, we hold that even if *Matter of Jean* were applicable, a valid claim of ineffective assistance of counsel more than satisfies its requirement that a petitioner "reasonably explain" his failure to file an application in a timely manner. Castillo supplied his attorney with all the requested information and materials. He repeatedly called his attorney's office to ensure that his application was filed before the deadline, and was told that it had, in fact, been filed. Indeed, we are hard pressed to think of a more "reasonable explanation" for a failure to timely file than the ineffective assistance of counsel as manifested in this case.

---

**12.** Due process challenges to deportation proceedings require a showing of prejudice to succeed. *See Getachew v. INS,* 25 F.3d 841, 845 (9th Cir.1994). It is clear that Castillo has met this requirement. "Prejudice is found when the performance of counsel was so inadequate that it may have affected the outcome of the proceedings." *Ortiz v. INS,* 179 F.3d 1148, 1153 (9th Cir.1999) (quoting *Barraza Rivera v. INS,* 913 F.2d 1443, 1448 (9th Cir.1990)).

## IV. Remedy

 The only effective remedy for ineffective assistance of counsel in this matter is to remand the case with instructions to apply the law as it existed at the time of Castillo's hearing before the IJ. As the Seventh Circuit has aptly stated, "[t]he only way to cure the ... defect in the original hearing is to afford [petitioner] not only a new hearing, but also a hearing in which counsel may protect [petitioner's] rights to the same extent that the attorney would have in the first hearing." *Batanic v. INS*, 12 F.3d 662, 667 (7th Cir.1993). Thus, regardless of whether or not NACARA's timing rule should, as a general matter, apply retroactively, it cannot be applied to Castillo, because he must receive a hearing under the law that applied to him at the time his original hearing occurred. Any other remedy would be inconsistent with the due process guarantees afforded to aliens in deportation proceedings. *See Campos–Sanchez v. INS*, 164 F.3d 448, 450 (9th Cir.1999). Moreover, the prejudice requirement of an ineffective assistance of counsel claim could be insurmountable in some situations if the petitioner were not entitled to avail himself of the law as it existed at the time he was subjected to the ineffective assistance. If, for instance, the law had changed so as to preclude a petitioner from the relief he originally sought, then the petitioner could never demonstrate that he was prejudiced by his attorney's failings if he could not receive the benefit of the old law. Even if we were faced with statutory language that purported to prescribe this result (which we are not), it is doubtful that we would construe the statute in such a manner, as it would raise "substantial constitutional questions." *United States v. X–Citement Video*, 513 U.S. 64, 68, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994). As a result, we need not consider the BIA's ruling, in the second petition for review before us, that the NACARA amendments should generally apply to people who, like Castillo, had completed seven years of continuous physical presence as defined by the old rule prior to the passage of NACARA.

The petition for review of the BIA's April 15, 1997 decision (No. 97–70548) is GRANTED, and we REMAND the case to the BIA with instructions to order a new hearing before an IJ so that Castillo may apply for suspension of deportation under 8 U.S.C. § 1254(a)(1) (1994). Because Castillo's petition for review of the BIA's July 27, 1999 decision (No. 99–71069) seeks identical relief, we VACATE the BIA's July 27, 1999 decision as moot. *See GATX/Airlog Co. v. United States Dist. Court for the Northern Dist. of Cal.*, 192 F.3d 1304, 1308 (9th Cir.1999).

Petition in No. 97–70548 GRANTED. REMANDED with Instructions. Petition in No. 99–71069 GRANTED. BIA decision VACATED as moot.