**Muhammad Ghulamhaider GWADURI; Rahim Muhammad Gwaduri; Nadia Muhammad Gwaduri, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 02–70629.
Agency Nos. A71–842–149, A71–842–148, A71–842–147.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 2003.

Decided July 10, 2003.

Before REINHARDT, O'SCANNLAIN, and FISHER, Circuit Judges.

MEMORANDUM *

I.

Muhammad Ghulamhaider Gwaduri is a citizen of Pakistan who, along with his family, has resided in the United States since 1990.[1] On appeal, Gwaduri seeks review of the Board of Immigration Appeal's ("BIA") denial of his motion to remand for a rehearing on his adjustment of status and voluntary departure claims on the grounds that he received ineffective assistance of counsel and that the Immigration Judge ("IJ") did not properly consider all of the evidence.[2] On review, we find that the ineffective assistance received by petitioner requires a new hearing before an IJ on the issues of adjustment of status and voluntary departure; thus, we reverse the decision of the BIA and remand the case for further proceedings consistent with this decision.

II.

*Jurisdiction*

This case is governed by IIRIRA's transitional rules. *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997). While Section 309(c)(4)(E) of IIRIRA deprives this court of jurisdiction to hear most discretionary decisions, it does not deprive us of jurisdiction to hear due process challenges to immigration decisions. *Torres–Aguilar v. INS*, 246 F.3d 1267, 1270 (9th Cir.2001); *Antonio–Cruz v. INS*, 147 F.3d 1129, 1130 (9th Cir.1998).

In deportation proceedings, "an alien's right to be represented by counsel is based on the due process guarantees of the Fifth Amendment"; ineffective assistance of counsel results in a denial of due process when the proceeding is so fundamentally unfair that the alien is prevented from reasonably presenting his case. *Iturribarria v. INS*, 321 F.3d 889, 899 (9th Cir. 2003).

Gwaduri asserts that he was denied due process under the Fifth Amendment in his

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Because the parties are acquainted with the facts and procedural history of this case, we repeat only an abbreviated summary here.

2. In the December 20, 1996 deportation proceeding, which is the subject of this appeal, pursuant to an Order to Show Cause under Section 241(a)(1)(B), respondent was denied adjustment of status under Section 245 and, in the alternative, voluntary departure under Section 240B(b).

deportation proceeding because his counsel: (1) made a material error when filling out Gwaduri's application for adjustment of status and voluntary departure, namely stating that he had *not* been convicted of a crime when by immigration law standards he had been; and (2) failed to prepare him to testify regarding his nolo contendere plea for misdemeanor sexual battery and the subsequent expungement of this plea from his record, thus leading the IJ to conclude, erroneously, that Gwaduri's testimony as a whole was not credible. We have jurisdiction to hear Gwaduri's challenge and to determine whether the proceedings, in fact, violated due process. *See Agyeman v. INS*, 296 F.3d 871, 885–887 (9th Cir.2002) (exercising jurisdiction over a discretionary denial of an adjustment of status and remanding the case for a new hearing where petitioner asserted a violation of his due process rights).

*Procedural Requirements*

■ After briefly noting Gwaduri's failure to follow all of the procedures in *Matter of Lozada*, 19 I & N Dec. 637, 639 (BIA 1988), the BIA proceeded to reach the merits of Gwaduri's ineffective assistance of counsel claim. In *Lozada*, the BIA held that a petitioner alleging ineffective assistance of counsel must: (1) provide an affidavit describing in detail the agreement with counsel; (2) inform the deficient counsel of the allegations and grant him an opportunity to respond; and (3) report whether a complaint of ethical or legal violations has been filed, and if not, why not. 19 I & N Dec. at 639. Here, while Gwaduri may have complied with the first two *Lozada* requirements, he did not comply with the third.

"While the requirements of *Lozada* are generally reasonable, they need not be rigidly enforced where their purpose is fully served by other means." *Castillo–Perez v. INS*, 212 F.3d 518, 526 (9th Cir.2000). *Lozada* was intended to ensure both that an "adequate factual basis exists in the record for an ineffectiveness complaint and that the complaint is a legitimate and substantial one." *Id.* Where, as here, the "record of the proceedings themselves is more than adequate to serve those functions," there has been "substantial compliance" with the rule, and the prerequisites are superfluous. *Id.; see also Rodriguez–Lariz v. INS*, 282 F.3d 1218, 1227 (9th Cir. 2002) (holding the *Lozada* factors are "not rigidly applied, especially when the record shows a clear and obvious case of ineffective assistance").

Because the administrative record shows that Gwaduri has a substantial claim that he was denied effective assistance of counsel, *Lozada'*s purpose is fully served. It was not necessary, therefore, for Gwaduri to strictly comply with the *Lozada* procedural requirements. In this connection, it is uncontested that Gwaduri's counsel, Neville Asherson, erroneously stated on the immigration form he submitted on Gwaduri's behalf that Gwaduri did not have any convictions, even though Asherson himself had been responsible for expunging the plea of nolo contendere and admitted as much to the IJ. The record also makes it plain that Asherson completely failed to prepare Gwaduri to testify regarding his nolo contendere plea[3] and its subsequent expungement, undoubtedly because of Asherson's own misunderstanding of the law.[4] Consequently, Gwaduri had not

---

3. Despite the fact that Asherson knew that Gwaduri was under the mistaken belief that the nolo contendere plea had resolved the charges and that neither the plea nor any preliminary matters would appear on his rec-

ord, he did not prepare Gwaduri to testify on this issue, or at all.

4. Asherson's misunderstanding of the relevant law regarding the effect of an expungement

been properly advised as to the effect of the two legal actions and was led to testify incorrectly, and in a confused manner, about their legal status.

Because this court has jurisdiction to determine whether the immigration proceedings violated due process and because Gwaduri presented a substantial claim of a due process violation, this court has jurisdiction to review the claim on the merits.

*Due Process Claim*

■ On the merits, the BIA determined that Gwaduri had not been prejudiced by his counsel's performance. We disagree.[5] Prejudice is found "when the performance of counsel was so inadequate that it may have affected the outcome of the proceedings." *Ortiz v. INS*, 179 F.3d 1148, 1153 (9th Cir.1999). Here, Gwaduri has established that his counsel's inadequate performance resulted in an adverse credibility finding and the ultimate decision to deny him adjustment of status and voluntary departure. Thus, the decision must be reversed. *See, e.g., Perez–Lastor v. INS*, 208 F.3d at 777–78 (BIA decision upholding the IJ's adverse credibility determination must be reversed if an alien establishes that a due process violation potentially affected the outcome of the proceedings.).

*Counsel's Performance*

First, Asherson filed documents with the INS on Gwaduri's behalf containing information Asherson knew or should have known to be materially inaccurate. Counsel had a duty to know that a nolo conten-

dere plea results in a conviction and that an expunged conviction is still considered a conviction for purposes of immigration law. *See Iturribarria*, 321 F.3d at 901 ("One reason that aliens ... retain legal assistance in the first place is because they assume that an attorney will know how to comply with the procedural details that make immigration proceedings so complicated."). Competence requires not merely filing the necessary application on time, but also verifying that it contains accurate information. *See, e.g., id.* at 900 (submitting the wrong application for cancellation of removal constitutes ineffective assistance of counsel). This is especially true where, as here, the relevant information is in counsel's possession.

Second, Gwaduri's attorney failed to prepare him even minimally for his hearing before the IJ, thus allowing him to testify under a continuing misapprehension as to the significance of the legal terms at issue and without the ability to explain his prior erroneous answers. Gwaduri provided the BIA with an affidavit stating that Asherson had advised him that he could properly deny having any criminal convictions and that Asherson had not explained "what an expungement meant in terms of the deportation hearing." A competent immigration attorney is expected to prepare his client "thoroughly" on the issue of whether or not he has been convicted of a crime. *See, e.g.,* 26 Am.Jur. Trials 327, § 19 ("The following items should be thoroughly reviewed with a client before his [immigration] hearing: 1. Does he have an

---

for immigration purposes is evidenced by his having obtained the expungement in order to turn Gwaduri's case into what he considered to be a routine matter. In fact, he considered the hearing on the adjustment of status claim to be only a formality, as he advised the IJ. Thus, it is evident that Asherson neither thought it necessary to explain the legal consequences of the nolo plea or the expunge-

ment to Gwaduri nor understood their importance to the immigration proceedings himself.

5. We review de novo claims of due process violations in deportation proceedings. *Rodriguez–Lariz*, 282 F.3d at 1222; *Abovian v. INS*, 219 F.3d 972, 978 (9th Cir.2000); *Perez–Lastor v. INS*, 208 F.3d 773, 777 (9th Cir.2000).

arrest or conviction record?"). It is apparent from the record that Asherson failed to prepare his client on this issue, in part because of his misunderstanding of the law. As a result, Gwaduri was unable to understand or accurately answer the questions posed relating to the consequences of his plea of nolo contendere or his expungement.[6]

*Prejudice*

There is a substantial likelihood that but for Asherson's errors, the IJ would have found Gwaduri to be a credible witness. The record indicates that the IJ's early discovery of Gwaduri's misstatements on his 1993 and 1996 adjustment of status applications and the continuing confusion in Gwaduri's testimony so tainted the proceedings that the IJ was unable to give Gwaduri a fair hearing and a reasonable opportunity to present his case. From the record, it appears that, as a result, the IJ took Gwaduri's disjointed responses to questions on even innocuous subjects as a sign of dishonesty, instead of as a sign of confusion or misunderstanding. In his decision, the IJ stated twice that Gwaduri had "lie[d] about [his conviction] to this Court in 1996 in his latest attempt to secure [an adjustment of] status." The IJ's contention is clearly erroneous. First, there was no benefit to Gwaduri to try to deceive the IJ about his prior conviction because Asherson had introduced the records of the conviction and confirmed their

accuracy through Gwaduri at the outset of the hearing. Second, Gwaduri's statements at the 1996 hearing never sought to contradict the facts contained in these records; in context, they clearly refer only to Gwaduri's understanding of the legal consequences. Thus, if Gwaduri had been properly advised by counsel and understood the legal significance of his nolo plea and expungement, he could have testified accurately and effectively on direct examination about the errors made inadvertently on his applications (including the application prepared by Asherson), instead of giving inaccurate and contradictory responses to questions on cross-examination from the government and the IJ. In such case, the IJ might have believed Gwaduri's reasonable assertion that, as a new immigrant with only one offense, he had been under the mistaken impression that his bargain with the government, a plea of nolo contendere with no time served, had served to clear his record. As a result, the IJ might well have found Gwaduri to be a credible witness.

In denying petitioner's motion to remand, the BIA also found that because the IJ's decision was supported by other factors, including that Gwaduri had worked without the permission of the INS and had been convicted of the misdemeanor (expunged from his record), Gwaduri failed to establish prejudice.[7] Gwaduri, however,

---

6. Particularly where it is clear from the record that an immigrant's command of the English language is limited, as here, it is crucial that counsel explain the legal terms to his client in layman's terms so that the immigrant may effectively respond to the questions posed.

7. The IJ also based his decision on the "vague, non-responsive, inconsistent answers" concerning the discrepancies in addresses and places of employment in the various applications Gwaduri had submitted to the INS. It is well-established that inconsis-

tencies of less than substantial importance for which a plausible explanation is offered cannot form the basis for an adverse credibility finding. *Bandari v. INS*, 227 F.3d 1160, 1166 (9th Cir.2000); *See also Osorio v. INS*, 99 F.3d 928, 932 (9th Cir.1996) (" 'minor omission,' 'minor inconsistencies,' and 'trivial errors' [ ] cannot support an adverse credibility finding"). Although Gwaduri appeared confused and answered many questions in broken English, he did offer an explanation for these minor inconsistencies that, if given by an oth-

need not show that but for the violation of due process he would have been granted relief. He need merely show that the deficiency "may have affected the outcome of the proceedings." *Ortiz*, 179 F.3d at 1153; *see also Perez–Lastor*, 208 F.3d at 780 ("An alien suffers prejudice if the violation potentially … affects the outcome of the proceedings.") (internal citations omitted). It is apparent from the IJ's decision that his principal reason for denying Gwaduri relief was his determination that Gwaduri was a dishonest person.[8] Thus, it is likely that if this credibility determination had gone in Gwaduri's favor, the IJ, in his discretion, would not have denied relief solely on the basis of the other less important factors.

In conclusion, if Asherson's performance had not been deficient, the IJ might have afforded Gwaduri the benefit of the doubt that he had been mistaken about whether a plea of nolo contendere was a conviction when responding to previous written inquiries and might well not have concluded that Gwaduri was still being dishonest at the time of the hearing; in such case, the IJ likely would have made a different, and favorable, credibility determination.[9] Because Asherson's inadequate performance

"may have affected the outcome of the proceedings," we reverse the BIA's decision and remand the case with instructions to order a rehearing before an IJ on Gwaduri's adjustment of status and voluntary departure claims. *Ortiz*, 179 F.3d at 1153.[10]

REVERSED and REMANDED for further proceedings in conformance with this disposition.

O'SCANNLAIN, Circuit Judge, dissenting.

OSCANNLAIN, Circuit Judge.

The court is correct that we retain jurisdiction to review due process challenges where the petitioner "allege[s] at least a colorable constitutional violation." *Torres–Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir., 2001). "Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Lopez v. INS*, 775 F.2d 1015, 1017 (9th Cir.1985).

---

erwise credible witness, might well have been accepted by the IJ.

**8.** It should be noted that during his deportation hearing Gwaduri's counsel withdrew a seemingly meritorious application for asylum. This application contained significant evidence that Gwaduri and his family would be in grave danger if they returned to Pakistan and that Gwaduri had been persecuted and tortured for his political activities in attempting to democratize the country. This information should have been presented by counsel in the context of the adjustment of status claim to further establish "humanitarian need." *See, e.g., Jacinto v. INS*, 208 F.3d 725, 734 (9th Cir.2000) (failure to inform petitioner that she could present evidence, in the form of affirmative testimony, can establish prejudice and a due process violation).

**9.** The IJ also found Gwaduri statutorily ineligible for voluntary departure because he had given false testimony for the purpose of obtaining a benefit under the immigration laws. The reasons that require reversal and remand with respect to the adjustment of status application are equally applicable here.

**10.** In view of our holding, we do not reach Gwaduri's contention that the IJ and the BIA failed to weigh certain favorable factors in their analysis. We note, however, that in any event we lack jurisdiction over that question. *Sanchez–Cruz v. INS*, 255 F.3d 775, 779 (9th Cir.2001); *Torres–Aguilar v. INS*, 246 F.3d at 1270.

In order to facilitate its consideration of ineffective assistance claims, the Board of Immigration Appeals has imposed the so-called "Lozada requirements," which mandate that aliens advancing such a claim to provide the board with

> 1) an affidavit explaining the agreement with his prior counsel regarding his legal representation; 2) evidence that prior counsel has been informed of the allegations of ineffective assistance and given the opportunity to respond; and 3) either a showing that a complaint against prior counsel has been filed with the proper disciplinary authorities or an explanation of the reasons why not.

*Ontiveros–Lopez v. INS,* 213 F.3d 1121, 1123 (9th Cir.2000). While it is undisputed that Gwaduri did not comply with the second and third of these requirements, the majority nevertheless holds that this a case in which "the facts are plain on the face of the administrative record," and thus "the requirements of *Lozada* are not dispositive." *Melkonian v. Ashcroft,* 320 F.3d 1061, 1072 (9th Cir.2003). I respectfully disagree.

The crux of Gwaduri's ineffective assistance claim is that (1) Asherson failed meaningfully to prepare him for the hearing; (2) Asherson mistakenly told him that he should deny ever being convicted; and (3) Asherson erroneously answered "no" on Gwaduri's most recent application. Only the third allegation is substantiated in the administrative record: Asherson himself admitted that the submission of the form was his fault, and the IJ specifically stated that he wouldn't hold it against him. The other two allegations are unsubstantiated—despite the majority's herculean efforts to tease out evidence of the first from Gwaduri's at times rambling testimony—and would, one suspects, be vigorously denied by Asherson. Thus, *Lozada's* second requirement would indeed have aided the Board's consideration of Gwaduri's claim—indeed, it is difficult to see how it could effectively consider the claim without hearing Asherson's side of the story. Asherson's other efforts on behalf of Gwaduri—including the procurement of both a skilled worker visa and an expungement of his conviction—seem to be nothing short of exemplary, or at least far from constitutionally deficient. As such, Gwaduri has not set forth facts sufficient to demonstrate the kind of "clear and obvious case of ineffective assistance" that this court has required before waiving the *Lozada* requirements. *See Rodriguez–Lariz v. INS,* 282 F.3d 1218, 1227 (9th Cir.2002).

Even were I in agreement with the majority's conclusion that the requirements are properly waivable here, it is far from clear that Gwaduri has been prejudiced by Asherson's alleged ineffective assistance. As noted above, the three principal allegations concern Asherson's failure to prepare Gwaduri, the submission of the false immigration form, and the advice that Gwaduri deny having been convicted. The failure to prepare, it seems to me, is the strongest of Gwaduri's claims. Even that, however, comes up short. For, as the government notes in its brief, the only preparation Gwaduri needed was to be told to be truthful. Indeed, the IJ seemed most concerned with Gwaduri's alleged lies concerning his 1993 application, which long predated Asherson's representation.

Because I believe that the *Lozada* requirements are not properly waivable here and that, even if they were, Gwaduri has not established prejudice, I respectfully dissent.