Muhammad Ghulamhaider GWADURI; Rahim Muhammad Gwaduri; Nadia Muhammad Gwaduri, Petitioners,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 02–70629.
Agency Nos. A71–842–149, A71–842–148, A71–842–147.

United States Court of Appeals, Ninth Circuit.

March 18, 2004.

Curtis Pierce, Law Office of Curtis F. Pierce, Los Angeles, CA, for Petitioner.

Regional Counsel, Laguna Niguel, CA, Los Angeles District Counsel, Office of the District Counsel, Los Angeles, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, San Francisco, CA, Margaret Perry, Stephen J. Flynn, Jacqueline Dryden, Department of Justice, Washington, DC, for Respondent.

Before REINHARDT, O'SCANNLAIN, and FISHER, Circuit Judges.

## ORDER

On November 6, 2003, petitioners' counsel filed a timely application for fees and other expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). The government's opposition to this motion was due on November 20, 2003. *See* Ninth Cir. Rule 39–1.7 ("Any party from whom attorney's fees are requested may file an objection to the request ... within 14 days after service of the request."). The government failed to take any action until December 30, 2003, nearly six weeks after the due date, when it filed a response accompanied by a motion to file out of time.

Under this circuit's practice, had it not been for an error by the Office of the Clerk of the Court, petitioners' application would have been granted long before the government's motion and response ever arrived. Ordinarily, after a request for fees under the EAJA is received in the Clerk's Office, it is held for 21 days pending the possible receipt of an objection from the United States.[1] If during this period the Clerk receives a timely objection from the government, she forwards the application and the response to the panel that decided the underlying appeal. But if the government fails timely to file an objection to the fee application, the uncontested application is forwarded to a motions attorney, who grants it. *See* Ninth Cir. Gen. Order 6.3.a. ("The Clerk also may dispose of motions enumerated in Appendix A or may in his or her discretion refer any of those motions to a[n] ... appropriate motions attor-

---

1. The additional seven days is to ensure that an otherwise timely filed petition has not somehow been misplaced in the internal mail system.

ney...."); Ninth Cir. Gen. Order App. A ("[M]otions attorneys shall have the same authority to act on procedural motions as the Clerk, and shall additionally be authorized to issue ... orders granting unopposed motions for attorney fees....").

■ Although we would likely have granted an extension of time had one timely been requested, the excuse offered by the government's attorney, that she was busy with other work and so was unable to file a request for such an extension or a timely motion in opposition, is inadequate. In this regard, we note that government counsel does not assert that the other attorneys in her office were also too busy to file an opposition on the merits, let alone a motion for an extension of time. There is simply nothing in the significantly delinquent motion for filing out of time that justifies the government's lengthy silence in this matter. Accordingly, the motion to file out of time is denied.

■ Given the overwhelming volume of work which today confronts our courts, more than 12,500 filings in 2003 in the Ninth Circuit alone,[2] we do not generally favor requiring judges in fee application proceedings to search out and research arguments that the other side does not make or *sua sponte* to initiate an opposition to a fee request where none is offered by the party affected, at least in the absence of a showing of injustice or hardship. *See Mendez v. Banco Popular de Puerto Rico*, 900 F.2d 4, 7–8 (1st Cir.1990). It is well-within our discretion to determine that the government's lack of timely opposition is tantamount to a concession that its position in the litigation was not substantially justified. *See United States v. Eleven Vehicles, Their Equipment, & Ac-*

*cessories*, 200 F.3d 203, 207, 214–15 (3d Cir.2000) (stating that in its discretion the district court may grant a motion for attorney's fees under the EAJA as an uncontested motion where the government fails to timely submit an opposition to such motion under a local rule); *see also FDIC v. Bender*, 127 F.3d 58, 62, 68 (D.C.Cir. 1997) (stating that the district court was justified in granting the FDIC's motion regarding fees on the ground that the opposition was filed beyond the time limit prescribed by local rule and therefore the FDIC's motion was "conceded"). Alternatively, the court may treat the government's non-opposition as constituting a failure to offer a basis for a finding of substantial justification and, thus, a failure to carry its burden of proof. *See, e.g., Libas, Ltd. v. United States*, 314 F.3d 1362, 1366 (Fed.Cir.2003) (holding that a court may grant the motion for attorney's fees under the EAJA "by relying on the government's failure to timely submit any evidence or explanation to carry its burden of proving its position was substantially justified as an admission" that its position was *not* substantially justified). Here, as a matter of discretion and pursuant to our authority to enforce our procedural rules, we grant Gwaduri's attorney's fees motion.

Our dissenting colleague, who has requested publication of this order, does *not* disagree with us that the court has the authority to grant an unopposed motion; nor could he do so credibly given existing case law and circuit practice, *see supra.* He does not assert that there is any precedent in this Circuit, or in any other for that matter, that would require us to deny such a motion. Indisputably, there is none. The matter is beyond question within the courts' discretion.[3] We see no reason to deviate in this case from our general prac-

**2.** *See, e.g., Ninth Circuit Court of Appeals Judgeship and Reorganization Act of 2003: Hearing Before the Subcomm. on the Courts, the Internet, and the Intellectual Property of the House Comm. on the Judiciary*, 108th

Cong. 14 (October 21, 2003 (statement of Hon. Diarmuid F. O'Scannlain)).

**3.** Courts have consistently exercised their discretion to grant motions on collateral issues, on the basis that, in failing to respond, the

tice of granting unopposed motions for attorney's fees under Gen. Order App. A where, as here, the out-of-time opposition we reject arrived at this court only after an inordinate delay, and the proffered explanation for that delay is one that we all agree is entirely "inadequate." *Dissent, infra*, p. 1148. We also note that the dissent's distinction between our normal practice and the "administrative oversight" here is irrelevant for our analysis. *Dissent, infra*, p. 1149–50. Even if the ordinary process had occurred, and the government had been able to seek reconsideration of the motions attorney's decision to grant an unopposed fee request with the Appellate Commissioner or a single judge of this court, the Appellate Commissioner or Circuit Judge would *also* have had discretion to grant the fee award on the basis of the government's untimely opposition. Accordingly, we exercise our discretion to grant

the motion, although we reduce the fees to the statutory cap and award a total amount of $6,750. *See Eleven Vehicles*, 200 F.3d at 212–13 (stating that a *sua sponte* judicial reduction of a fee request is appropriate where predicated on a legal as opposed to a factual challenge).

The government's motion to file out of time is DENIED as untimely. The petitioners' motion for attorneys fees is GRANTED as MODIFIED.

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

I join my colleagues in voting to deny the Government's motion for late filing of an objection to the Gwaduris' request for fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (2003). Although I certainly understand what it is like to have to handle a "high volume of work," [1] and even to have to "prepare

opposing party has consented to such action by the court. *See United States v. Warren*, 601 F.2d 471, 473–74 (9th Cir.1979) (district court did not err in basing its decision to dismiss the indictments on a local rule, which stated that the "failure to file a brief or memorandum of points and authorities in support of or in opposition to any motion shall constitute a consent of the party failing to file such a brief or memorandum to the denial or granting of the motion"); *Weil v. Seltzer*, 873 F.2d 1453, 1459 (D.C.Cir.1989) (appellant who failed to file response to a motion in limine within time prescribed by local rule "is deemed to have waived his opposition" to the motion and "may not now complain on appeal"); *United States v. Patten*, 826 F.2d 198, 199 (2d Cir.1987) (holding that having failed to oppose the government's motion to allow dismissal of the original indictment without prejudice, the defendant could not claim error in the district court's decision to grant it); *Sayers v. Stewart Sleep Ctr. Inc.*, 140 F.3d 1351, 1354 (11th Cir.1998) (holding that the district court acted within its discretion in upholding a cost award made by a court clerk on the basis that the opposing parties failed to timely file a memorandum in opposition).
Ironically, much of this burdensome caseload tracks that of the very Government attorney

responsible for replying to the Gwaduris' fee application. *See id.* at 15 ("Along with a double-digit growth in overall appeals, we have seen a marked upswing in immigration appeals.... For court year 2003, we received around eighty immigration appeals each and every week. Indeed, immigration appeals now make up about a third of the Ninth Circuit's docket.").

**1.** *See, e.g., Ninth Circuit Court of Appeals Judgeship and Reorganization Act of 2003: Hearing Before the Subcomm. on the Courts, the Internet, and Intellectual Property of the House Comm. on the Judiciary*, 108th Cong. 14 (October 21, 2003) (statement of Hon. Diarmuid F. O'Scannlain, U.S. Circuit Judge) ("Even with the lumbering number of judges on our Circuit, we can hardly keep up with the immense breadth and scope of our Circuit's caseload. In the 2002 court year, we handled 11,271 appeals—over double the average of other circuits, and almost twenty-five hundred more cases than the next busiest court (the Fifth). Unfortunately, these numbers will only increase, and indeed have: as of three weeks ago, the end of the 2003 court year, that volume climbed to 12,632 filings.").

much of [my] own correspondence," these excuses offered by the Government's attorney are simply inadequate to forgive its having missed—by nearly six weeks—our court's 14–day deadline for filing such a response. *See* Ninth Cir. R. 39–1.7 ("Any party from whom attorneys fees are requested may file an objection to the request . . . within 14 days after service of the request.").

I must dissent, however, from the court's grant of attorneys' fees. I certainly recognize that, absent the peculiar combination of the court's administrative oversight and the Government's belated motion for late filing of its objection, the Gwaduris' otherwise unopposed motion for fees apparently long ago would have been granted by a staff attorney. Yet now that this application has come formally before the panel, I believe a fee award in this case to be statutorily unauthorized.

I

It is well-settled that fees under the EAJA may be awarded against the Government only if its litigating position in the case from which the prevailing party's request arises lacked "a reasonable basis in law and fact." *Pierce v. Underwood,* 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *see also* 28 U.S.C. § 2412(d)(1)(A). That simply cannot be said of the position taken by the Government in response to the Gwaduris' assertion that their due process rights were violated by having received ineffective assistance of counsel before the INS. *Cf. Lopez v. INS,* 775 F.2d 1015, 1017 (9th Cir.1985) ("Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.").

In its disposition awarding relief, the majority conceded that the Gwaduris had not complied with the BIA's procedural requirements for the presentation of an ineffectiveness claim, as established in *Matter of Lozada,* 19 I & N Dec. 637, 639, 1988 WL 235454 (BIA 1988). *See Gwaduri v. INS,* 69 Fed.Appx. 878, 880 (2003) (unpublished disposition).[2] Our prior caselaw had held that those requirements generally are waivable only when the court is presented with what the record reveals to be "a clear and obvious case of ineffective assistance." *See Rodriguez–Lariz v. INS,* 282 F.3d 1218, 1227 (9th Cir.2002). As explained in greater detail in my dissenting opinion, I believe neither that that standard was met here, nor that the Gwaduris even received constitutionally ineffective assistance at all. *See Gwaduri,* 69 Fed.Appx. at 884 (O'Scannlain, J., dissenting). I therefore believe the Government's position that the BIA did not err in denying the Gwaduris' motion to remand was at least reasonable—even if it ultimately failed to garner a majority vote of this court. *See Pierce,* 487 U.S. at 552, 108 S.Ct. 2541 ("[T]he Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose.").

Notably, the court's decision to grant fees does not suggest otherwise. Instead,

---

**2.** Although I usually am loathe to call attention to an unpublished disposition for the reasons well-stated in *Hart v. Massanari,* 266 F.3d 1155, 1176–80 (9th Cir.2001); *see also* Alex Kozinski & Stephen Reinhardt, *Please Don't Cite This! Why We Don't Allow Citation to Unpublished Opinions,* Cal. Lawyer, June 2000, at 43–44 & 81, I pause to observe that this is one of the *very few* instances in which doing so may be appropriate. *See* Ninth Circuit Rule 36–3(b)(ii) ("[Unpublished dispositions] may be cited to this Court or by other courts of this circuit for factual purposes, such as to show . . . entitlement to attorneys' fees.").

my colleagues seem merely to follow a practice of routinely granting EAJA fee requests whenever the government fails to oppose their award. That custom is understandable in light of the uniquely demanding burdens generated by our court's gargantuan caseload, and in view of the adversary nature of our system of justice. *Cf.* Order at 1146.

But while I do not think it impermissible, I also do not believe it to be required. Therefore, I must disagree with my colleagues' apparent suggestion that, in these circumstances, the court has but two alternatives. *See id.* ("[The court may] determine that the government's lack of timely opposition is tantamount to a concession that its position ... was not substantially justified. Alternatively, we may treat the government's non-opposition as ... a failure to carry its burden of proof.") (citations omitted). Indeed, there is an obvious but overlooked third alternative: At least two of our sister circuits have recognized that a court properly may reach the merits of, and in the end may even deny, an unopposed fee request under the EAJA. *See Libas, Ltd. v. U.S.,* 314 F.3d 1362, 1366 (Fed.Cir.2003) (holding that a court may deny an unopposed request for fees pursuant to the EAJA so long as it provides a reasoned explanation for its decision); *United States v. Eleven Vehicles, Their Equipment, and Accessories,* 200 F.3d 203, 212 (3rd Cir.2000) (explaining that, although a court generally may not reduce EAJA fees in the absence of a Government objection, that limitation on *sua sponte* court action applies only to the amount of fees—not to whether those fees are available in the first instance).[3]

Most surprising, given the curious mordancy of their order awarding fees, is the fact that my colleagues appear entirely to agree with the eminently moderate position I have advanced. Though they decline to reach the issue whether the Government's position was "substantially justified," they have opted to award fees at a rate lower than requested by the Gwaduris—apparently on the theory that no special legal expertise was required to prosecute the Gwaduris' ineffectiveness claim. *See* Order at 1146–47; *cf. Ramon–Sepulveda v.INS,* 863 F.2d 1458, 1463 (9th Cir. 1988) ("[E]ven if immigration law can be classified as a practice specialty, the legal problem posed in [this case] requires no 'distinctive knowledge' or 'specialized skill'.... On the contrary, [petitioner's] legal claim against the INS involves established principles of res judicata—principles with which the majority of attorneys are, or should be, familiar.") (*quoting Pierce,* 487 U.S. at 572, 108 S.Ct. 2541). The majority's colorful talk of "concession" and of "the government's failure to carry its burden of proof," Order at 3331, thus rings hollow—for, by reaching the merits of an unopposed motion in this fashion, the majority engages in precisely the analysis it suggests we ought now to eschew.[4]

II

One further observation might be appropriate. Had an administrative oversight not resulted in the Gwaduris' fee request coming before this panel in such peculiar fashion, and had a motions attorney simply granted the Gwaduris' request for fees pursuant to what appears to be the pre-

---

3. Although these two cases address the authority of the lower federal courts, they are equally applicable in this context—where we are not reviewing a district court's decision, but in the first instance determining the propriety of awarding fees for legal work rendered on appeal.

4. *Cf.* Order at 1146 ("[W]e do not generally favor requiring judges in fee application proceedings ... *sua sponte* to initiate an opposition to a fee request where none is offered by the party affected, at least in the absence of a showing of injustice or hardship.").

vailing practice, the Government would have had 14 days within which to contest such award. *See* Ninth Cir. R. 27–7; Ninth Cir. Gen. Order App. A. One wonders whether such an adverse disposition would not have at last prompted the Government timely to respond to the Gwaduris' request, in which case the motions attorney's decision then would have been reconsidered on the merits by our court's Appellate Commissioner or by a single judge of this court. *See id.*[5]

By contrast, today's order denies the Government that critical opportunity, leaving as its only possible path to redress the filing of a petition for rehearing en banc. Now, to garner what otherwise would be an *automatic* reconsideration of this award in response to an objection, the Government will have to obtain the votes of some 14 of our present complement of 26 active judges. Thus, even though today's award of fees appears merely to achieve the same

5. The majority somewhat curiously suggests that, in the event the Government had moved for such reconsideration, the Appellate Commissioner or Circuit Judge responsible for addressing that motion could have denied it and granted the requested fees solely on the basis of the Government's *earlier* failure to respond to the request. *See* Order at 1147. This proposition, however, seems at odds with the framework within which it assertedly operates.

Pursuant to this court's Rules, and subject to the court's approval, the Chief Judge may "delegate to the Clerk or a designated deputy clerk [the] authority to decide motions that are subject to reconsideration by a single judge or appellate commissioner." Ninth Cir. R. 27–7. For present purposes, the relevant delegation provides only that circuit court mediators and motions attorneys may "issue ... orders granting *unopposed* motions for attorney fees." Ninth Cir. Gen. Order App. A(50) (emphasis added). If the judicial actor

result that our *administrative practice* otherwise would have reached, *the panel's* decision to mimic that custom here sets the Gwaduris' motion on a distinct procedural course—and one that appears far more likely to result in the needless expenditure of taxpayer dollars.

### III

For the foregoing reasons, I respectfully dissent from the court's discretionary decision to award attorneys' fees.

*required* by the Government's filing of a reasoned "motion for ... reconsideration[] or rehearing," Cir. Advisory Comm. Note to Ninth Cir. R. 27–7(1)(c), to appraise the propriety of the motions attorney's fee order could dispose of such responsibility simply by pointing to the Government's earlier lack of opposition, then such mandatory rehearing would be little more than an empty formality. After all, because motions attorneys are empowered to enter the kind of order which would initiate that process *only* when the issuance of such an order is formally unopposed in the first instance, *see* Ninth Cir. Gen. Order App. A(50), dispensing of a subsequently arising responsibility to reconsider the award of fees on grounds that they earlier were uncontested would be purely circular; it simply could serve no meaningful purpose (unless one sees a particular value in requiring an Article III adjudicator merely to count the days between the filing of a party's request for fees and the issuance of the motions attorney's order, while simultaneously dis-

couraging him or her from considering the underlying merit of the award).