

# FILED

JUL 12 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>KEVAN HARRY GILMAN,<br><br>Debtor. | BAP Nos. CC-18-1066-TaLS<br>BAP Nos. CC-18-1100-TaLS<br>   (related)<br><br>Bk. No. 1:11-bk-11603-VK |
| TAMMY R. PHILLIPS; TAMMY R. PHILLIPS, A PROFESSIONAL LAW CORPORATION,<br><br>Appellants,<br><br>v.<br><br>KEVAN HARRY GILMAN; SHIRLEE L. BLISS,<br><br>Appellee. | MEMORANDUM[*] |

Argued and Submitted on November 29, 2018
at Pasadena, CA

Filed – July 12, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Victoria S. Kaufman, Bankruptcy Judge, Presiding

---

Appearances:    Charles Quentin Jakob argued for Appellants; Mark E. Ellis of Ellis Law Group, LLP, argued for Appellee.

---

Before: TAYLOR, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

This appeal concerns litigation that no economically rational actor would perpetuate.

Tammy R. Phillips and Tammy R. Phillips, a Professional Corporation (jointly, "Creditors") obtained a pre-petition judgment against Debtor Harry Gilman based on $8,250 in statutory damages under the Rosenthal Fair Debt Collection Practices Act (the "Act"). The Act allows for recovery of attorneys' fees, so the judgment included a $100,000 fee award. California law also allows for recovery of attorneys' fees when collecting such a judgment. Thus, when Debtor filed a chapter 7 case, he scheduled Creditors as holding a $150,000 claim; Creditors asserted that their claim for nonbankruptcy collection costs actually approximated $1 million.

Debtor's bankruptcy estate was not asset rich. So Creditors took actions to maximize chances of recovery on the judgment. First, they objected to Debtor's claim of a homestead exemption. They have been

successful in part, but this litigation continues. Second, they obtained a judgment denying Debtor's discharge. No one questions the facial appropriateness of this type of bankruptcy activity, but the volume of sanctions, discovery, and reconsideration motions engendered by Creditors in these activities was far, far beyond that normally seen in such cases. For purposes of this appeal, we focus only on the activity in the main case and identify 28 such motions filed by Creditors. Thus, as the bankruptcy judge resignedly commented—while being repeatedly interrupted—at a hearing: "[W]e're going to make rulings . . . and you are going to be . . . litigating until the end of time. . . . This is what . . . when you have a person who isn't being economically rational, this is what happens." Hr'g Tr. (June 7, 2017) 58:23–60:10.

Eventually, Creditors filed the three motions relevant to these appeals. The motions collectively and respectively seek more than $700,000 in fees and costs for litigation in the bankruptcy case under CCP § 685.040,[1] an award under Civil Rule 37, and a sanctions award under Rule 9011, § 105, and the bankruptcy court's inherent authority.[2] The bankruptcy court

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, all "Civil Rule" references are to the Federal Rules of Civil Procedure, and all "CCP" references are to the California Code of Civil Procedure..

[2] They seek an additional fee award of more than $1.4 million in the objection to discharge adversary proceeding.

allowed $137,907.66 in fees and costs and denied the other two motions; in the process, it awarded Gilman $2,000 in costs. Creditors appeal from each of these determinations. In a separate opinion, we affirm the bankruptcy court's decision to deny a portion of the fee request and a portion of a fee request in the adversary proceeding as untimely under the applicable California law. In this memorandum we deal with all other issues arising in the main case and determine that the bankruptcy court did not err.

Accordingly, we AFFIRM.

## FACTS

In 2011, Debtor filed a chapter 7 petition. He scheduled a $150,000 debt to Creditors. He also initially scheduled two pieces of property, one in Van Nuys, California. On Schedule C, he claimed a CCP § 704.730 enhanced homestead exemption on the Van Nuys property. He stated: "Debtor has [c]ancer and has not been able to work in his business."

Creditors filed a nondischargeability and objection to discharge adversary proceeding against Debtor and pursued it with tenacity. Creditors also objected to his homestead exemption. Given the scheduled assets and claims, collection of any significant portion of the prepetition judgment was dependent on minimizing the exemption claims, avoiding discharge so that Creditors could pursue postpetition assets, and, given Debtor's age and health, some significant luck.

Debtor initially did not oppose the objection to exemption; the

4

bankruptcy court sustained it. In the meantime, however, Debtor filed an amended Schedule C and claimed a reduced exemption ($104,000), on a reduced property value ($433,000), and again sought an enhanced exemption based on his cancer diagnosis. Creditors objected to the amended exemptions, and Debtor sought and obtained relief from the first exemption order under Civil Rule 60(b)(1).

Eventually, in August of 2012, the bankruptcy court concluded that, while Debtor was entitled to a homestead exemption, evidentiary issues required trial as to the claim for a $4,000 enhanced homestead exemption. Creditors then unsuccessfully sought reconsideration. The order denying Creditors' renewed objection to the homestead exemption claim was not entered for over two years (the "Homestead Exemption Order"). Creditors appealed.

Leading up to the enhanced exemption trial, the parties participated in discovery; as relevant here, Creditors served requests for admissions on Debtor. The parties also attempted to mediate the dispute, but Creditors' principal did not attend the mediation in person. Debtor sought sanctions for this failure, but the bankruptcy court denied the motion.

The bankruptcy court finally held the evidentiary hearing in July of 2015 and concluded that Debtor was not entitled to an enhanced homestead (the "Disability Enhancement Order").

Having prevailed (in part) on their exemption objection, Creditors

5

sought to recover their fees and other sanctions. First, in January of 2016, they filed a motion seeking attorneys' fees based on their state law rights (the "Judgment Enforcement Motion"). They requested a lodestar award of $756,425 (1,915 hours at $395 per hour) plus other costs.

Later that year, Creditors filed two sanctions motions. The first sought sanctions under Civil Rule 37 because Debtor allegedly failed to admit something later proven at trial (the "Civil Rule 37 Motion"). By this motion, they requested an award of $264,662 in attorneys' fees (670.031 hours at $395 per hour), plus other costs of $4,948.85. The second sought attorneys' fees under Rule 9011, § 105(a), and the bankruptcy court's inherent authority (the "Rule 9011 Motion"). Here, they requested an award of $440,835.80 in attorneys' fees (1,116.04 hours at $395 per hour) and $6,406.62 in costs.

After oral argument, the bankruptcy court denied both sanctions motions and awarded reduced fees and costs. It entered a memorandum decision that discussed these determinations and a separate order granting in part and denying in part the Judgment Enforcement Motion; it awarded fees of $134,214.50 and $3,693.16 in costs. It also entered an order denying the Rule 9011 Motion and awarding Debtor attorneys' fees and costs under Rule 9011(c)(11)(A) as well as orders denying two reconsideration motions. Finally, the bankruptcy court entered an order denying the Civil Rule 37 Motion.

The Creditors timely appealed from these determinations.

In the meantime, the district court affirmed the bankruptcy court's Homestead Exemption Order, but the Ninth Circuit affirmed in part and vacated and remanded for further proceedings. It concluded that the bankruptcy court properly granted Debtor's Civil Rule 60(b)(1) motion, but it vacated the Homestead Exemption Order because "the bankruptcy court made no findings regarding [Debtor's] *intent* to continue to reside in the property." *Phillips v. Gilman (In re Gilman)*, 887 F.3d 956, 966 (9th Cir. 2018).

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court abuse its discretion in granting in part and denying in part the Judgment Enforcement Motion?

Did the bankruptcy court abuse its discretion in denying the Civil Rule 37 Motion?

Did the bankruptcy court abuse its discretion in denying the Rule 9011 Motion and awarding Debtor costs?

## STANDARDS OF REVIEW

We review "de novo questions of law concerning entitlement to attorney's fees." *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 828 (9th Cir. 2018). But we review the amount of "attorney fees awarded

under state law for abuse of discretion." *Id.* (alterations and internal quotation marks omitted).

It is well established in this Circuit that a reviewing court "will not disturb a bankruptcy court's award of attorneys' fees unless the bankruptcy court abused its discretion or erroneously applied the law." *Countrywide Home Loans, Inc. v. Hoopai (In re Hoopai)*, 581 F.3d 1090, 1095 (9th Cir. 2009) (quoting *In re Kord Enters. II*, 139 F.3d 684, 686 (9th Cir. 1998)); *Amick v. Bradford (In re Bradford)*, 112 B.R. 347, 353 (9th Cir. BAP 1990). We afford broad deference to the bankruptcy court's determinations on fee awards because of its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

This deference is especially appropriate in the context of fee awards because the bankruptcy court has the benefit of two distinct but equally valid perspectives concerning the reasonableness of the fees requested: first, the bankruptcy court observes, in an immediate, particularized, and firsthand basis, the delivery of services in connection with particular matters or hearings, and can thus assess the difficulty of the tasks presented and other factors that should dictate the likely time and skill necessary to produce the services, as well as the quality of the services; second, the bankruptcy court has the added perspective of presiding over

the matter in a cumulative sense, and is therefore also uniquely able to assess the overall reasonableness of fees measured by the entirety of the aggregate task. Both perspectives are valid, and the bankruptcy court may employ either, or both, in any given instance.

Accordingly, our deference also extends to the depth of the bankruptcy court's factual findings. It is uniquely the province of the bankruptcy court to determine the level of review and the basis for critique in fee review, and a reviewing court should defer as thoroughly to that decision by the bankruptcy court as it would to any other decision concerning reasonableness of fees, so long as the bankruptcy court's findings are "explicit enough on the ultimate issues to give the appellate court a clear understanding of the basis of the decision." *In re Bradford*, 112 B.R. at 353 (9th Cir. BAP 1990) (citing *Louie v. United States*, 776 F.2d 819, 822-23 (9th Cir. 1985)). In other words, consistent with our review of factual matters, we will only reverse or vacate and remand a finding concerning reasonableness of fees where such finding is illogical, implausible, or without support in the record, *see TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)), or where the bankruptcy court, having undertaken a more particularized review of a fee charge, has left us uncertain as to the basis for its determination.

We review for an abuse of discretion a bankruptcy court's decision to

9

deny: a Civil Rule 37 motion, *Magnetar Techs. Corp. v. Intamin*, Ltd., 801 F.3d 1150, 1155 (9th Cir. 2015); a sanctions request under Rule 9011, *Classic Auto Refinishing, Inc. v. Marino (In re Marino)*, 37 F.3d 1354, 1358 (9th Cir. 1994); and a sanctions request under the bankruptcy court's inherent authority, *see Price v. Lehtinen (In re Lehtinen)*, 564 F.3d 1052, 1061 (9th Cir. 2009), *abrogated on other grounds by Gugliuzza v. FTC (In re Gugliuzza)*, 852 F.3d 884, 898 (9th Cir. 2017).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc.*, 653 F.3d at 832 (citing *Hinkson*, 585 F.3d at 1262). We may affirm on any basis in the record. *Bill v. Brewer*, 799 F.3d 1295, 1299 (9th Cir. 2015).

## DISCUSSION

Three motions are involved in this appeal: two concern sanctions, so we address them jointly; we separately address the Judgment Enforcement Motion.

## A.    The bankruptcy court correctly reduced Creditors' fee request.

Creditors challenge the bankruptcy court's decision on their Judgment Enforcement Motion. In that motion (which requested $756,425 in attorneys' fees), Creditors sought attorneys' fees under three theories of recovery: CCP § 685.040; the "common fund" doctrine; and the private

10

attorney general doctrine, CCP § 1021.5. The bankruptcy court concluded that only one theory (CCP § 685.040) supported a fee award. Because Creditors on appeal only discuss CCP § 685.040 and do not dispute the bankruptcy court's determination that it is the only appropriate basis for fee recovery, we limit our analysis accordingly.

1. **California Code of Civil Procedure §§ 685.040 and 685.080 govern Creditors' fee request.**

On appeal, Creditors now argue that CCP § 685.040 and 685.080 do not govern their fee request and do not form a basis for a portion of the fee disallowance. We address and reject these arguments in a separately-issued opinion, which we incorporate by reference.

2. **The bankruptcy court may exercise discretion in determining what a reasonable fee award is.**

Creditors contend that the bankruptcy court erred in reducing the fees because it acted as an advocate; instead, they argue, the court should have allowed the fee request in its entirety, given Debtor's alleged non-opposition. Because this determination concerns the amount of fees awarded, we review for an abuse of discretion. *PSM Holding Corp.*, 884 F.3d at 828.

First, Debtor did oppose the motion, but he filed it on the wrong docket. Creditors acknowledge this mishap repeatedly: in the bankruptcy court reply paper, Bk Dkt 510 at 3, they note:"Mr. Ellis filed a document . . . in the adversary docket. Its content establishes it is nothing but an

11

opposition to Plaintiffs' motion for fees in the bankruptcy case . . . . The opposition memorandum filed by Mr. Ellis – which Plaintiffs will treat as if it were filed in the bankruptcy case . . . ."; in their appellate excerpts of record, BAP Dkt 13-1 at 3, they note "Debtor's 'Opposition' to Fee Motion in Bankruptcy Case"; and in their appellate reply brief, BAP Dkt 32 at 8, they complain that "Creditors' counsel acted like a mensch and assumed Debtor committed some clerical error by filing his opposition to the bankruptcy case fee motion in the wrong docket." Creditors' suggestion in their opening appellate brief that Debtor did not oppose the motion is disingenuous and elevates form over substance.

Second, even if there were no opposition, the bankruptcy court had the independent prerogative to review the requested fees. Contrary to Creditors' suggestion, it was not required to rubber-stamp their fee request. They argue, citing *Gwaduri v. Internal Revenue Service*, 362 F.3d 1144 (9th Cir. 2004): "Given the overwhelming volume of work confronting the courts, absent a showing of **injustice or hardship** judges should not search out and research arguments that the other side does not make or initiate an opposition to a fee request *sua sponte* where none is offered." Opening Br. at 17–18; *cf. id.* at 20 ("Her [(i.e., the bankruptcy judge's)] arguments are misplaced in this case. Gwaduri instructs courts not to engage in such activity absent a showing of **injustice or hardship**."). But that is not an accurate read of *Gwaduri*, where the Ninth Circuit wrote:

12

> Given the overwhelming volume of work which today confronts our courts . . ., we do not generally favor requiring judges in fee application proceedings to search out and research arguments that the other side does not make or *sua sponte* to initiate an opposition to a fee request where none is offered by the party affected, at least in the absence of a showing of injustice or hardship.

362 F.3d at 1146. The Ninth Circuit concluded that it was a matter of *discretion*. *Id.* Bankruptcy courts are not required to do so in cases involving injustice and hardship, but they have the discretion to do so.

In this case, the bankruptcy court exercised its *discretion* to consider the reasonableness of the requested fees. This was not error. It was, in fact, correct and called for by the statute: CCP § 685.080, the statutory basis for the fee award, explicitly invites judicial discretion and disallowance of fees; it authorizes the court to allow or disallow "the costs to the extent *justified* under the *circumstances* of the case." Cal. Code Civ. Proc. § 685.080(c) (emphasis added).

And we emphasize the considerable restraint shown by the bankruptcy court in reducing the fee amount. If we look only at the main case fee request and the scheduled claim, the fee request is five times the claim and the claim itself consists almost entirely of fees. If we take the adversary proceeding request into account, the collection fees are more than 14 times greater than the judgment. And if we credit the Creditor's claim to another million in fees yet to be requested in the state court,

13

collection fees for a $100,000 judgment were more than $3,000,000 over two years ago; and collection activity legitimately continues. Again, the non-fee related damages were $8,250. The mind boggles.

Fee shifting statutes such as the Act are important; they allow low income plaintiffs to obtain counsel to vindicate their rights. Collection recovery statutes such as CCP § 685.040 assist in this important activity. But the potential for abuse is apparent; no one expects the consumer plaintiff to actually pay these fees, so no one is policing generation of such fees. The statutory limitation to "reasonable fees" fills this void appropriately only when judges actually review fees. Here, a judge theoretically could disallow some measure of fees solely by deeming them objectively unreasonable in quantum. But the bankruptcy court did not take the easy route even in part. She engaged with the fee request in a detailed fashion; she well-fulfilled the role suggested by the statute in so doing.

3.     **The bankruptcy court did not err or abuse its discretion when it disallowed particular fees.**

Creditor requested $434,424.95 in attorneys' fees (1,099.81 hours at $395 per hour) incurred within two years of the filing of the Judgment Enforcement Motion. The bankruptcy court allowed $134,214.50 in attorneys' fees and $3,693.16 in costs.

Creditors contend that the bankruptcy court abused its discretion by

14

disallowing fees without a clear and specific explanation of how it came up with the amount disallowed. On this point, Creditors predominately rely on cases concerning fee awards in federal civil rights cases,[3] not cases involving bankruptcy or collection of a judgment under CCP § 685.040.[4] Regardless, we disagree. The bankruptcy court issued an 18-page, single-spaced decision on Creditors' motion for attorneys' fees; the bankruptcy court devoted six pages to parsing Creditors' individual fee categories and providing specific reasons for disallowance. We reject Creditors' characterization of the disallowance as unclear and nonspecific.

Next, Creditors argue that the bankruptcy judge misunderstood what "judgment enforcement" means. First, they claim that the bankruptcy court violated the "purpose of the action rule." Opening Br. at 36–39. California courts, they say, have repeatedly focused on the broad, macro-level

---

[3] *E.g.*, *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) ("Lawyers must eat, so they generally won't take cases without a reasonable prospect of getting paid. Congress thus recognized that private enforcement of civil rights legislation relies on the availability of fee awards . . . .").

[4] Indeed, Creditors' argument would not be well taken in California state court, where courts are not required to explain their fee awards with particularity. *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 67 (2009), *as modified on denial of reh'g* (Nov. 4, 2009) ("We find no California case law analogue to section 632 requiring trial courts to explain their decisions on all motions for attorney fees and costs, or even requiring an express acknowledgment of the lodestar amount. The absence of an explanation of a ruling may make it more difficult for an appellate court to uphold it as reasonable, but we will not presume error based on such an omission."); *id.* ("In awarding attorney fees in a lesser amount than requested, trial courts are not required to specify each and every claimed item found to be unsupported or unreasonable.").

"purpose" of the enforcement "action": "California courts have not suggested trial judges are free to cherry-pick litigation activities (e.g., motions) in such suits and decree them not to constitute judgment enforcement. Precedent is to the contrary." *Id.* at 38. For support, they cite, among other cases, *Globalist Internet Technologies, Inc. v. Reda*, 167 Cal. App. 4th 1267 (2008). Put differently, Creditors essentially argue that once the bankruptcy court concluded that they were enforcing a judgment, it was required to award them all of their requested fees in the proceeding.

But *Reda* does not stand for that broad proposition; it actually stands for the opposite conclusion. In *Reda*, the California Court of Appeal concluded that a judgment creditor's defense of a specific performance action was incurred in enforcing a judgment under CCP § 685.040. *Id.* at 1276. But the Court of Appeal "took no position on whether [judgment creditor] is entitled to all of the attorney fees incurred" in defending the lawsuit; instead, the appellate court concluded that the "trial court is in a better position to determine on remand if the attorney fees sought are reasonable." *Id.* Properly understood, then, *Reda* stands for the opposite conclusion than the one asserted by Creditors: although defending a lawsuit can qualify as enforcing a judgment, the judgment creditor may not be entitled to *all of the attorney fees* incurred in defending that lawsuit because the fees *must be reasonable*. Thus, the bankruptcy court did not legally err when it considered both whether individual motions or actions

16

qualified as judgment enforcement or were reasonable or justified.

Second, Creditors suggest that the bankruptcy court adopted a categorical rule "that time associated with any type of sanctions motion does not constitute judgment enforcement." Opening Br. at 35. But that does not accurately reflect the bankruptcy court's decision.

The bankruptcy court concluded that Creditors, through their exemption objections, "obtained determinations that certain assets that would otherwise not be available for liquidation and payment of claims could be used or liquidated to generate a distribution to Creditors . . . ." Bk Dkt 547 at 15. And this, the bankruptcy court concluded, citing *In re Conservatorship of McQueen*, 59 Cal. 4th 602, 612–13 (2014), qualified as "enforcement" for CCP § 685.040 purposes. *Id.* But, the bankruptcy court cautioned, "Creditors' fees and costs still must be 'reasonable' to be allowed, as discussed below." *Id.*

The bankruptcy court then turned to reasonability. It correctly quoted CCP § 685.080(c) as stating that "[t]he court shall make an order allowing or disallowing the costs to the extent justified under the circumstances of the case." *Id.* at 16 (quoting Cal. Civ. Proc. Code § 685.080(c)). And it accurately recited caselaw establishing that courts in California and the Ninth Circuit customarily assess reasonableness through a lodestar analysis. *Id.* at 16–17. Creditors do not dispute this.

Nor do Creditors dispute the rest of the bankruptcy court's legal

17

conclusions:

> "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939-40, 76 L.Ed.2d 40 (1983)). "After computing the lodestar, the court must assess whether additional considerations require adjustment of the figure, such as the novelty or complexity of the issues, the skill and experience of counsel, the quality of representation and the results obtained." *PSM Holding*, 2015 WL 11652518, at *4.

> "The time to be compensated in an award must be 'reasonable in relation to the success achieved.'" *McGinnis v. Kentucky Fried Chicken of California*, 51 F.3d 805, 810 (9th Cir. 1994) (quoting *Hensley*, 461 U.S. at 434). If the plaintiff achieved only partial or limited success, then the court may 'reduce the award to account for the limited success.'" *Stonebrae, L.P. v. Toll Bros., Inc.*, 2011 WL 1334444, at *18 (N.D. Cal. Apr. 7, 2011) (quoting *Hensley*, 461 U.S. at 436-37). For instance, in *PSM Holding,* the court reduced the movants' fees by 30% "to reflect [the movants'] limited success on" certain matters. *PSM Holding*, 2015 WL 11652518, at *25. Similarly, in *Rodriguez v. Barrita, Inc.*, 53 F.Supp.3d 1268 (N.D. Cal. 2014), the court reduced the lodestar by 20% because the movant "Could have achieved the same result without pursuing" many of the motions that were filed.

Bk. Dkt. 547 at 17.

Now we arrive at the bankruptcy court's evaluation of the various fee entries in categories A through U.[5] The bankruptcy court disallowed fees

---

[5] The bankruptcy court allowed all hours in categories A, E, and I. Debtor did not cross-appeal.

for three reasons: first, as unreasonable, excessive, or overbilled; second, as unnecessary to judgment enforcement; and, third, as unrelated to the category they were billed in.

We review the first type of disallowance for an abuse of discretion. Creditors take umbrage with the bankruptcy court's conclusions that many of the entries were "unnecessary," "unreasonable,""excessive," and "duplicative." Stating that they were "not slackers," Creditors claim that these labels are insufficient to support the reduction of fees. And they quibble with the bankruptcy court's reasoning on nearly every disallowance entry. But in their steadfast belief that they are correct, they suffer from a lack of appellate perspective—instead of showing how the bankruptcy court abused its discretion by not adopting their view, they myopically repeat the same type of arguments they made to the bankruptcy court. And having reviewed the record, Creditors' briefing in this appeal, and the bankruptcy court's dockets, we are not left with the definite and firm conviction that the bankruptcy court erred. Put differently, we are not convinced that the bankruptcy court's conclusion that Creditors pursued unnecessary, unreasonable, and excessive work (i.e., Creditors did not efficiently prosecute their case) or engaged in duplicative work is illogical, implausible, or without support in the record.

Creditors' lack of perspective is reflected in their counsel's treatment of the bankruptcy court and its opinions at the hearing. For example:

19

- "MR. JAKOB: Well, there's also the issue of -- I'm not going to get anywhere with you [i.e., Judge Kaufman], so why don't we just go on and get to the -- the other issues." Hr'g Tr. (June 7, 2017) 33:6–8.

- "THE COURT: I disagree that you get to do whatever you want and file whatever you want and it all counts as enforcement." *Id.* at 33:25–34:2. "MR. JAKOB: Well, you may do that. But I don't think . . . ." *Id.* at 34:3–4.

- "MR. JAKOB: . . . Issue C, I don't understand why you [i.e., Judge Kaufman] are talking -- first, we never agreed with the -- the ruling, but you -- we're not going to be able to fight you on this issue . . . ." *Id.* at 60:12–16.

Another exchange between the bankruptcy court and Creditors' counsel reflects their misconception of the bankruptcy court's role in assessing reasonableness: "THE COURT: Well, just because you spent that much time on it doesn't mean it's reasonable." Hr'g Tr. (June 7, 2017) 36:7–8. "MR. JAKOB: Yeah. But I -- there is -- within the concept of reasonable, there is sort of the burden shifting type idea, and I don't see that process going on here because there was no opposition." *Id.* at 36:9–12. The bankruptcy court then explained: "Well, the Court . . . takes account of the legal issue, the analysis, the written work product . . . the success. I mean, these are all issues we're supposed to take into account in assessing reasonableness." *Id.* at 36:13–17.

And we reproduce, at length, the bankruptcy court's analysis concerning a set of fees requested in the adversary proceeding, which it heard the same day:

> Well, . . . because I specifically read the pleading that the order to show cause, which said what was at issue and . . . it only had to do with whether a bar date should be set. And you went -- you didn't address pertinent issues. You addressed a lot of . . . unrelated issues and spent more time than was necessary for the research that was -- that was appropriate for that particular order.
>
> And it included a lot of stuff that had nothing to do with that order in your response. So . . . the Court having reviewed the response and looking at what it addressed and thinking about what the issues were that were appropriate -- . . . the issues about setting a bar date and -- and estimating the claim[, I] thought that . . . that spending 10.4 hours for the work on drafting and revising the response (indiscernible) was excessive.

*Id.* at 37:7–38:1; *cf. id.* at 68:15–18 ("THE COURT: Well, I doubt very much that research -- it would take 83 hours to research opposition to a motion to continue. It's not worth that much time. It's not reasonable. It's excessive.").

The docket, itself, reflects the inefficiencies, unreasonableness, and excessiveness of the case. Creditors filed at least 35 sanction or discovery motions in the main case and adversary proceeding combined. A few were

21

granted; most were not.[6]

The above typifies Creditors' arguments and the bankruptcy court's reasoning. In short, the bankruptcy court correctly stated that part of its task was to assess the reasonableness of the fees; Creditors essentially believe the bankruptcy court was compelled to approve all of the fees. But CCP § 685.040 does not give Creditors carte blanche to incur fees and pass them on to Debtor.

And the bankruptcy court, in assessing the reasonableness of the fees, employed its general familiarity with bankruptcy cases and its more specific familiarity with this particular case as it transpired. So we see no reason to fault the bankruptcy court's disallowance of fees as unreasonable, duplicative, or excessive; it did not abuse its discretion in doing so.

This, combined with Creditors' lack of appellate perspective, affects our review of the bankruptcy court's other rulings. We would otherwise review the bankruptcy court's conclusions that entries were unnecessary to judgment enforcement de novo. But the bankruptcy court disallowed hours in the following categories because they were *both* unnecessary to

---

[6] The arguments Creditors raise in their opening appellate brief also suffer from cognitive dissonance. *Compare* Opening Br. at 45 ("The motion seeking sanctions against Creditors was denied. At a bare minimum, if a debtor does not prevail on a motion for sanctions the debtor has done nothing but bring meritless litigation for the purpose of avoiding payment to a creditor."), *with id.* at 44 ("The judge asserts 'Creditors did not prevail on this motion,' but fee recovery is never based on whether a particular motion is won or lost."), *and id.* at 44 n.8 ("Whether a motion (including one for sanctions) is granted or denied does not determine whether it was reasonably pursued.").

enforcement *and* unreasonable or excessive: B; F; H; L; M; N; P; R; and T.

Regrettably, Creditors discuss only half of the bankruptcy court's reasoning. For example, in at least categories R, M, and T (and partially in category B), Creditors disagree only with the bankruptcy court's conclusion that it was unnecessary for judgment enforcement; but they fail to address the bankruptcy court's conclusion that the fees were *unreasonably incurred*. As a result, even if we agreed with Creditors that the entries were necessary for judgment enforcement, we would still affirm because they do not show that the bankruptcy court abused its discretion in assessing the reasonableness of the fees.

The bankruptcy court did not make this dual finding about all of the entries; it disallowed some entries solely because they were unrelated to judgment enforcement:

- In category J ("Oppose Motion for Mediation Sanctions"), the bankruptcy court disallowed the requested fees solely because they were unrelated to judgment enforcement. It reasoned that Creditors filed the opposition to protect themselves from a sanction award, not to collect on their judgment. On appeal, Creditors state that this is nonsensical and argue that the opposition was "necessarily filed" to collect a judgment "because it was filed in an enforcement action." Opening Br. 43. But this argument relies on Creditors' incorrect assumption that the bankruptcy court may not consider whether

23

individual pieces of litigation in a broader lawsuit are enforcement actions. In any event, we agree with the bankruptcy court: here, Creditors were attempting to avoid sanctions prompted by their principal not appearing in person at a mediation; this was not judgment enforcement.

- In category O ("Appeal Related"), the bankruptcy court concluded that Creditors' responding to an order to show cause why an appeal should not be dismissed for Creditors' failure to prosecute did not qualify as judgment enforcement work. Creditors admit this disallowance, of 0.25 hours, was correct.

- Next, for category S, which concerns the Civil Rule 37 Motion, the bankruptcy court concluded that the motion was "not incurred as part of any enforcement activity by Creditors." Bk Dkt 547 at 5. On appeal, Creditors repeat their blanket assertion that the bankruptcy court abused its discretion "because enforcement is judged at the macro level, the ruling is conclusory, and emanates from an erroneous conception of law." Opening Br. at 46. As discussed above, Creditors are wrong on these macro-level points. They offer no other explanation for why the bankruptcy court erred as to this category.

In some of the categories, Creditors plausibly address the bankruptcy court's reasonability findings, but they do not do so convincingly.

- In category P ("Disability Trial Preparation"), the bankruptcy court,

24

after disallowing hours for sanctions-related motions, concluded that 339.56 hours was unreasonable and excessive; instead, it allowed 125 hours. On appeal, this is where Creditors assert that they were "not slackers" (*see supra* at 17) in their efforts. And they emphasize how important the trial was for their overall efforts. Opening Br. at 42 ("The trial meant more to [Creditors] than prevailing over a $4000 enhancement to an exemption claim."). But this does not amount to an argument about why the bankruptcy court, which presided over the trial, abused its discretion in determining that 125 hours was a reasonable amount of time to prepare and participate in the trial.

- In category U ("Miscellaneous") the bankruptcy court disallowed 1.30 hours as unreasonably incurred and unrelated to judgment enforcement. Creditors state that they "sought to reduce enforcement expense by keeping [Gilman's bankruptcy counsel Shirlee] Bliss on the CM/ECF service" list and that they successfully asserted a service defect. Opening Br. at 59–60. But they do not show that their opposition was even needed to keep Bliss on the service list.

- In category B ("Mandatory Pretrial Disclosures"), the bankruptcy court allowed 10 hours to draft and revise pretrial disclosures. Creditors state that they spent 16.7 hours preparing pretrial disclosures "ordered by the court at Debtor's request[]" and suggest the bankruptcy court somehow overlooked this. Opening Br. at 55.

25

The bankruptcy court ordered the parties to comply with Civil Rule 26(a)(3). And Creditors do not show that the bankruptcy court erred when it, admittedly implicitly, concluded that 10 hours was reasonable for pretrial disclosures.

The bankruptcy court disallowed other fees as excessive or overbilled (i.e., unreasonable):

- In category C, the bankruptcy court concluded that 6.2 hours constituted overbilling for reviewing a ruling. Creditors contend the bankruptcy court "falsely describe[d] it as 'overbilling'" because the entries show they were reviewing the audio file for an entire evidentiary hearing. Creditors are wrong; the time entry is imprecise. Although the audio file may have concerned an entire evidentiary hearing, the time entries and the record before the bankruptcy court do not show that. Instead, the entry simply states: "Review/analyze recording of hearing to obtain rulings word-for-word and to prepare motion for summary judgment".

- In category D, the bankruptcy court concluded that 120.7 hours was excessive for a motion for summary judgment on Debtor's entitlement to an exemption in two accounts; it instead allowed 75 hours. On appeal, Creditors only state that the bankruptcy court failed to provide an explanation, but they provide us scant information about the underlying motion. And as we have already

noted, given the context of the case and the bankruptcy court's explanation of how it approached reasonableness, we are not persuaded that the bankruptcy court abused its discretion.

- In category H, the bankruptcy court, after disallowing 4.05 hours related to sanctions motions, concluded that 52.1 hours was excessive for responding to a motion to disqualify and allowed 20 hours instead. On appeal, Creditors repeat their argument that the bankruptcy court's treatment of the matter was too cursory, which we have already addressed elsewhere. They also claim that the bankruptcy court committed clear error because there were only 2.05 hours associated with sanctions motions and Creditors were opposing two motions. But the billing statements are not clear enough to substantiate the first claim (i.e., at least 5.05 hours appear plausibly related to sanction-related motions), and we are not persuaded the bankruptcy court erred in concluding that 20 hours was sufficient time to oppose even two motions to disqualify.

- In category L ("Miscellaneous"), the bankruptcy court allowed 0.1 hours for review of an order and disallowed 6.4 hours as involving sanctions motions and being unreasonably incurred and unrelated to enforcement. On appeal, Creditor argues that none of the entries refer to sanctions and, instead, they were miscellaneous entries with no unifying theme. We acknowledge that the entries do not clearly state

that they were related to sanctions, but at least 4.5 hours relate to motions the bankruptcy court could plausibly interpret as sanctions related ("Draft/revise motion for security for costs", described in Creditors' appellate brief as intended to "provide compensation for frivolous litigation", and "Draft/revise conditional motion to disqualify Bliss").

- In category K ("Close Case Mandatory"), the bankruptcy court concluded that the fees were unreasonably incurred and disallowed 4.9 hours. On appeal, Creditors simply state that this is not enough of an explanation. We disagree.

- In Category O, the bankruptcy court concluded that arguments in Creditors' motion for summary relief were duplicative of arguments made before the bankruptcy court and in one of Creditors' appellate briefs and, as a result, the request for 18 hours to prepare the motion was unreasonable. It, instead, allowed 6 hours for preparing appellate arguments. Creditors contend that the bankruptcy court, in referencing a "motion for summary relief" was mistaken, because there was a separate "database of charges for time that was spent in the district court[]" and the entries relate to a motion for summary judgment in the bankruptcy court. Opening Br. at 57. This does not, however, amount to a showing that the bankruptcy court erred. For instance, they do not substantiate their assertion that there was a

separate database of entries, as there is no "district court" category in the fee application.

The bankruptcy court also disallowed fees as unrelated to the category they were billed in.

- In category B ("Mandatory Pretrial Disclosures"), the bankruptcy court disallowed 0.75 hours for work performed in the adversary proceeding—not the main bankruptcy case. Creditors contend this was clearly erroneous because the work could have been used in *both* the main case and the adversary proceeding. This does not, however, amount to a showing that the bankruptcy court abused its discretion when it concluded that recovery of these fees was inappropriate in the main bankruptcy case.

- In category C, the bankruptcy court disallowed 5.9 hours as unrelated to the relevant discovery hearing. Creditors argue that, at the hearing, the bankruptcy court ordered Gilman to produce documents and the 5.9 hours were spent reviewing either the produced documents or supplemental discovery responses; so the time was, Creditors assert, related to the hearing and in any event was recoverable as reviewing documents produced in discovery even if not associated with a hearing. We disagree. Proper categorization allows the bankruptcy court to evaluate the reasonability of not just the individual entries but also the total entries in the category. Creditors have not shown

that it was an abuse of discretion to disallow fees on this basis. And to the extent the discovery hearing resulted in Gilman otherwise producing documents, we see no error in the bankruptcy court's implicit conclusion that reviewing documents was unrelated to the process of compelling production of those documents.

Given the Ninth Circuit's recent decision in the Gilman Homestead Exemption Order appeal, we separately address categories G ("New Trial Motion") and F (the "Existence of Homestead Exemption"). Here, the bankruptcy court concluded that most of the time entries related to Creditors' motions for reconsideration or a new trial on the homestead exemption issue. This was the second time Creditors sought reconsideration of that issue. *See* Bk Dkt 84 at 2, 315, 547 at 2. As such, the bankruptcy court found that Creditors repeated arguments that it had already ruled on; thus, it concluded, the fees were unnecessary to enforcement and unreasonably incurred. Creditors argue that the Ninth Circuit's decision invalidated this reasoning because it vacated the bankruptcy court's order and "effectively ordered the judge to take Creditors' arguments seriously and do her work over again." Opening Br. at 53. But this does not address the bankruptcy court's reasoning: when a party disagrees with a bankruptcy court's conclusion, the remedy is to appeal or to file a single reconsideration motion—not to repeat arguments that the bankruptcy court has already addressed. Put differently, a party

30

may be correct when they assert that a decision is wrong and yet simultaneously be wrong to repeat that assertion to the bankruptcy court. Doing so is, as the bankruptcy court found, unnecessary and unreasonable.

Finally, in one isolated instance, Creditors ask us to act as the trial court. Category Q concerns letters that Creditors sent to the chapter 7 trustee. The bankruptcy court concluded that this was unnecessary because the chapter 7 trustee would already have been aware of the various items in the letter (she received electronic notice of all case activity), so the fees were unreasonably incurred and unnecessary to enforcement of Creditors' judgment. On appeal, Creditors ask us to receive evidence, namely "an email from the trustee's assistant showing the trustee saw value in, and intended to review, the letter." Opening Br. at 50. This, however, would be inappropriate; so we **deny** the motion. We do not evaluate new evidence and confine our review to the record as presented to the bankruptcy court. *United States v. Waters*, 627 F.3d 345, 355 n. 3 (9th Cir. 2010) ("Facts not presented to the district court are not part of the record on appeal.").

The above is not a comprehensive review of every argument Creditors make about every disallowance entry. But after disallowing entries for the above reasons, the bankruptcy court allowed: 2.80 hours in A; 10 in B; 25 in C; 75 in D; 3.30 in E; 4.8 in F; none in G; 20 in H; 31.3 in I; none in J; none in K; 0.1 in L; none in M; none in N; 5 in O; 125 in P; none in Q; 36.4 in R; none in S; none in T; and none in U. Creditors have not shown

that the bankruptcy court's fee award was an abuse of discretion.

Accordingly, we AFFIRM the bankruptcy court's decision to reduce Creditors' requested fees.

**B.    The bankruptcy court correctly denied Creditors' Civil Rule 37 motion, denied Creditors' non-Civil Rule 37 sanction motion, and awarded Debtor attorneys' fees.**

Creditors ask us to: first, reverse the bankruptcy court's denial of their Civil Rule 37 Motion; second, reverse the bankruptcy court's awarding Debtor $2,000 in attorneys' fees; and, third, reverse the bankruptcy court's denial of their Rule 9011 Motion. We decline to do so.

**1.    The bankruptcy court did not abuse its discretion when it denied Creditors' Civil Rule 37 motion.**

Civil Rule 37, applied in contested matters by Rule 9014, provides for sanctions when a party "fails to admit what is requested under [Civil] Rule 36" and the "requesting party later proves . . . the matter true . . . ." Fed. R. Civ. P. 37(c)(2); Fed. R. Bankr. P. 9014. The rule provides for exceptions. *See* Fed. R. Civ. P. 37(c)(2)(A)–(D).

Civil Rule 36(a)(1), applied in contested matters by Rule 9014, allows a party to request admission of any matter within the scope of Civil Rule 26(b)(1), relating to "facts, the application of law to fact, or opinions about either . . . ." Fed. R. Civ. P. 36(a)(1); Fed. R. Bankr. P. 9014. That said, requests "for pure admissions of law . . . are inappropriate." *Cal. Capital Ins. Co. v. Riley (In re Riley)*, BAP No. CC-15-1379-TaLKi, 2016 WL 3351397, at *6

(9th Cir. BAP June 8, 2016) (citing 7 James Wm. Moore et al., *Moore's Federal Practice—Civil* § 36.03 (3d ed.) and 8B Charles Alan Wright et al., *Federal Practice and Procedure* § 2255 & n.7 (3d ed.)).

This appeal concerns request for admission number 15 ("RFA 15"). RFA 15 states: "You are not entitled to a disability enhancement under California's automatic homestead exemption statute because on the petition date you were not disabled within the meaning of that statute." Creditors contend that sanctions are appropriate because they later prevailed at trial and disallowed Gilman's disability enhancement exemption.

In its memorandum decision, the bankruptcy court found that RFA 15 was an improper legal conclusion and that sanctions were not warranted under Civil Rule 37(c)(2)(A):

> The RFAs the creditors highlight are either the *very same* RFAs the creditors referred to in their motion in limine, which the Court has already ruled to be objectionable, or are of the same nature as those RFAs, i.e., they are legal conclusions. Thus the RFAs are covered by an exception to Rule 37(c)(2) in that they are objectionable. Consequently, sanctions are inappropriate under Rule 37 as to these RFAs.

Bk Dkt 493 at 4.

On appeal, Creditors argue this was error because RFA 15 was not objectionable. But they never develop this position. In any event, we agree

with the bankruptcy court that RFA 15 was an improper legal conclusion.[7]

They also argue that Civil Rule 37(c)(2)(A)'s exception only applies when the court *has already held* the RFA objectionable. This has some facial appeal; it accords with the literal text of Civil Rule 37(c)(2), which states that sanctions must be ordered unless "the request was held objectionable under Rule 36(a) . . . ." Fed. R. Civ. P. 37(c)(2)(A). And there is no clear Ninth Circuit authority on the matter. That said, we see no reason to resolve this question. Civil Rule 37(c)(2)(A) is just one of four exceptions. Another exception provides that the bankruptcy court may deny sanctions

---

[7] Litigants are "discouraged from using Civil Rule 36 with 'the hope that a party's adversary will simply concede essential elements.' " *In re Riley*, 2016 WL 3351397, at *6 (quoting *Conlon v. United States*, 474 F.3d 616, 622 (9th Cir. 2007)). Instead, the "rule seeks to serve two important goals: truth-seeking in litigation and efficiency in dispensing justice." *Conlon*, 474 F.3d at 622.

Distinguishing between the application of law to fact and a legal conclusion is not easy. *In re Riley*, 2016 WL 3351397, at *8. Applying law to fact concerns a "mixed question of law and fact", *id.*, which in turn concerns "questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.'" *Pullman–Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982).

Our reasoning in *In re Riley* applies here. There, we held that an RFA was an improper request for a legal conclusion because the RFA "mirror[ed] the terms of the statutory language" instead of "fram[ing] questions in relation to the particular facts of the case"; in short, we found that the RFA was a legal conclusion because it "would leave the bankruptcy court with nothing to do but rubber stamp a judgment . . . ." *In re Riley*, 2016 WL 3351397 at *8. Here, similarly, an admission that Gilman was "not disabled within the meaning of" California's disability enhancement statute would be a concession on the essential elements of the matter. *Id.*

if "the party failing to admit had a reasonable ground to believe that it might prevail on the matter . . . ." Fed. R. Civ. P. 37(c)(2)(C). It also allows the bankruptcy court to deny sanctions if "there was other good reason for the failure to admit." Fed. R. Civ. P. 37(c)(2)(D).

Although the bankruptcy court did not explicitly find that either of these exceptions applied, on the very same date and after the same hearing, the bankruptcy court found that Debtor did not act improperly in litigating the disability exemption matter and believed he was entitled to the exemption. *See* Bk Dkt 494 at 8 ("Again, because the debtor may have believed himself to be entitled to a disability exemption based on his medical history and ongoing medical evaluations, without additional evidence, it cannot be said that the debtor pursued his defense in bad faith.").[8] As a result, we see no error in the bankruptcy court's decision that Civil Rule 37(c)(2) sanctions were not warranted.

### 2. Creditors' Rule 9011 Motion was improper; as a result, the bankruptcy court correctly awarded Debtor attorneys' fees.

Creditors' other sanction motion relied on § 105(a), Rule 9011, the court's inherent power, and LBR 9011-3 and 1001(f). The bankruptcy court denied the Rule 9011 Motion and imposed costs on Creditors' attorney.

---

[8] *See also id.* at 6–7 ("Although the Court found that the debtor was not disabled as of the petition date and that the debtor had the *ability* to engage in substantial gainful employment at that time, there is no evidence that the debtor's and/or Ms. Bliss' belief that the debtor was entitled to a disability enhancement was baseless or that claiming such an exemption was frivolous.").

**The bankruptcy court correctly awarded Gilman costs under Rule 9011.** Rule 9011 is the bankruptcy counterpart to Civil Rule 11. *Shalaby v. Mansdorf (In re Nakhuda)*, 544 B.R. 886, 899 (9th Cir. BAP 2016). "Case law interpreting Rule 11 is applicable to Rule 9011." *Id.* (quoting *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 829 (9th Cir. 1994)). Relevant here, Rule 9011(b) requires parties and their attorneys to certify: that the papers are "not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;" Fed. R. Bankr. P. 9011(b)(1); and that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." Fed. R. Bankr. P. 9011(b)(3).

If a court determines that Rule 9011(b) has been violated, it may impose an appropriate sanction. Fed. R. Bankr. P. 9011(c). Before filing a Rule 9011 motion, however, the movant must provide the other party a 21-day safe harbor. *See* Fed. R. Bankr. P. 9011(c)(1)(A). The Ninth Circuit strictly enforces the safe harbor provision. *Islamic Shura Council of S. California v. F.B.I.*, 757 F.3d 870, 872 (9th Cir. 2014). In addition, Civil Rule 11 motions "cannot be served after the district court has decided the merits of the underlying dispute giving rise to the questionable filing." *Id.* at 873.

Finally, Rule 9011 provides that, if warranted, the "court may award

36

to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." Fed. R. Bankr. P. 9011(c)(1)(A).

Here, the bankruptcy court concluded that Debtor prevailed on the motion and assessed his expenses and costs against Creditors.

Creditors first argue that the cost award must be vacated under the law of the case because the Ninth Circuit vacated the judgment and remanded for further proceedings. They contend that, as a result, the motion was not untimely because the matter has not been adjudicated. We disagree. The motion alleged that sanctions were warranted based on Gilman's claiming an enhanced disability homestead exemption and filing two motions. The bankruptcy court correctly noted:

> Because the Court had already ruled on Debtor's entitlement to a disability enhancement to his homestead exemption, as well as the other two motions mentioned by Creditors, the underlying disputes had been decided long before Creditors brought the Motion. Consequently, in accordance with *Islamic Shura*, the Motion would have to be denied.

Bk Dkt 516 at 3. The Ninth Circuit's decision did not disturb either the bankruptcy court's order denying Gilman's enhanced disability exemption claim or its resolution of the two other motions.

Second, Creditors argue that the fee award was not warranted as a matter of law—they suggest that, when a motion is found untimely under *Islamic Shura*, the appropriate remedy is simply to deny the motion.

37

Creditors' proposed per se rule contravenes Rule 9011, which explicitly states: "If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion." Fed. R. Bankr. P. 9011(c)(1)(A). The bankruptcy court had discretion to award fees.

Third, Creditors contend that the bankruptcy court could not award fees to Debtor's counsel because he failed to comply with 11 U.S.C. § 329(a). But Creditors point to no authority for this proposition. For that matter, they do not explain why a statute requiring an attorney to disclose to the bankruptcy court what fees the attorney received from the debtor (at the risk of disgorgement if the bankruptcy court determines that the fees were *unreasonable* and, by implication, that the debtor overpaid) is relevant to a bankruptcy court's determining what a *reasonable* fee was and awarding that fee to a debtor's attorney, payable by the opposing side.

Fourth, Creditors argue that the award was not warranted because of an alleged lack of conflict waivers; they state: "The traditional remedy for serious conflicts is fee forfeiture." Opening Br. at 40. This does not, however, explain why the bankruptcy court's *decision to award fees* was wrong, much less why the bankruptcy court, in its discretion, should have applied the alleged traditional remedy.

Fifth, Creditors suggest that the bankruptcy court was chilling legitimate advocacy because it shifted fees when precedent was not clear

about whether a Rule 9011 motion focused on statements in bankruptcy schedules require a safe harbor. They argue that *Islamic Shura* involved a safe harbor and a concern for conserving judicial resources. This misreads *Islamic Shura*. There, the Ninth Circuit held that *even though* the Shura Council had provided a safe harbor to the FBI, the Civil Rule 11 motion should not have been granted because the district court had already ruled on the merits of the underlying matter. 757 F.3d at 873. Here, the bankruptcy court correctly read *Islamic Shura* as holding that a Civil Rule 11 (or Rule 9011) motion should not be granted if the court has already ruled on the merits of the underlying matter.

In sum, Creditors do not adequately show that the bankruptcy court abused its discretion in awarding Gilman attorneys' fees under Rule 9011(c)(1)(A).

**The bankruptcy court did not abuse its discretion when it denied Creditors' Rule 9011 Motion.** Creditors next discuss the bankruptcy court's denial of their motion; they focus their attention not on Rule 9011 but on their inherent power and § 105 theories.

Bankruptcy courts have inherent authority to sanction bad faith or willful misconduct. *In re Lehtinen*, 564 F.3d at 1061. To impose sanctions under its inherent authority, the bankruptcy court must find either bad faith, conduct tantamount to bad faith, or recklessness with an "additional factor such as frivolousness, harassment, or an improper purpose." *Fink v.*

*Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). As for § 105, Creditors invoked it in their motion as permitting the bankruptcy court to sanction entities that act in bad faith, vexatiously, wantonly, or for oppressive reasons and who abuse the bankruptcy court's processes. On appeal, however, Creditors confine their attention to their bad faith position.

We turn to the bankruptcy court's findings. As to § 105, the bankruptcy court noted that Creditors failed to show that Debtor's filings concerning the disability exemption were frivolous or baseless: "The debtor contended he was disabled. Medical records presented during the evidentiary hearing demonstrated that the debtor was in fact diagnosed with several conditions before and after the petition date." Bk Dkt 494 at 6. It continued:

> Although the Court found that the debtor was not disabled as of the petition date and that the debtor had the ability to engage in substantial gainful employment at that time, there is no evidence that the debtor's and/or Ms. Bliss' belief that the debtor was entitled to a disability enhancement was baseless or that claiming such an exemption was frivolous. Among other things, both before and after the petition date, in connection with a prepetition diagnosis of cancer and related surgery, the debtor was repeatedly being tested for indicia of cancer. The debtor testified that the prospect of cancer recurring caused him to be depressed and incapable of working full-time. The creditors cannot deem responses to their own motions "vexatious" when the responses were neither frivolous nor baseless.

*Id.* at 6–7. Creditors disagree with this conclusion and repeat their theory of the case: in their view, Debtor and Bliss failed to make reasonable inquiry into the facts of the disability claim and indisputably acted in bad faith. But they never explain how the bankruptcy court's findings are clearly erroneous.

The bankruptcy court made a similar finding concerning Debtor's mediation motion and the disqualification motion:

> As to the first, the debtor correctly noted that the creditors did not appear in person at the parties' scheduled mediation. Moreover, most of the allegations appear to be against Brandon Reeves, the debtor's adversary proceeding counsel, and thus inapplicable to either the debtor or Ms. Bliss. Either way, the debtor had a nonfrivolous basis for his request for mediation sanctions.
>
> The same is true for the motion to disqualify the creditors' attorney. That motion was based on the advocate-witness rule after the creditors' attorney indicated he would be testifying at trial. Although the Court did not disqualify the creditors' counsel, the motion was "colorable" for the same reasons mentioned by the creditors themselves: California authority existed supporting the debtor's contentions. For these reasons, sanctions are not warranted under § 105(a).

*Id.* at 7.

Creditors all but concede the first point when they sophistically argue that they "were physically present through their counsel— who had telephonic access to his clients and full legal authority to settle." Opening

41

Br. at 46; *see id.* at 48 ("Doing so *consented to* spending time in a mediation—a mediation at which Phillips appeared *personally*, albeit not *physically*."). Instead, they argue that, even if there was a colorable argument for the mediation motion, Debtor and Bliss filed it in bad faith. Once again, they repeat their theory of the case, *see, e.g., id.* at 49 ("[Reeves] was so blinded by rage and greed that he falsely suggested Phillips had not made travel arrangements. He was totally blind-sided when it was revealed Phillips had prepared extensively for the mediation."), but fail to explain how the bankruptcy court's finding that Debtor and Bliss *did not act in bad faith* and had *non-frivolous* bases for the motions was clearly erroneous.

Creditors make the same argument about the disqualification motion; the bankruptcy court, they say, misunderstood the law because a litigant who is motivated by bad faith may be sanctioned even if they raise colorable legal arguments. And they assert that there is "overwhelming evidence of bad faith." Opening Br. at 51. *E.g.,* Opening Br. at 52 ("Bliss was angry for many reasons . . . . She uploaded the newly-redacted documents to CM/ECF from a file folder named 'JERK'—an obvious reference to the undersigned counsel. . . . Bliss sought revenge and an easy solution to the fact she feared, and was unprepared, for trial." (emphasis removed)). They repeat this in connection with the disability exemption claim. These arguments suffer the same flaw: Creditors are correct that bankruptcy

42

courts may sanction litigants who raise colorable arguments but act with improper purpose; but they ignore that the bankruptcy court affirmatively found that Debtor and Bliss acted with a proper purpose and not in bad faith; and, more critically, they fail to convince us that the bankruptcy court clearly erred in so finding. Instead, they repeat their interpretation of the facts. Even if their version of the facts were plausible, we would still defer to the bankruptcy court's findings, which are not implausible, illogical, or without support in the record.

## CONCLUSION

In short, Creditors have not shown that the bankruptcy court erred or abused its discretion in any respect. Accordingly, we AFFIRM the bankruptcy court's orders.